### AND

## THE CORRECTION OF ERRORS

#### OF THE

## STATE OF NEW-YORK,

### IN APRIL, 1823.

---

ATKINSON, Appellant,
*against*
MANKS & HOLROYD, Respondents.

On a bill of interpleader, a decree that it is properly filed, is the only de-
cree which the complainant is interested in obtaining.

It is a final decree, within the meaning of the statute (1 *R. L.* 134, *s.* 9,)
and the party may appeal after 15 days.

Where it goes on to order a reference to a master, by consent of the
parties, upon principles calculated to adjust the rights of those called
upon to interplead, it will be considered a substitute for the ordinary
proceeding by actual interpleader.

An appeal from the final decree, necessarily opens for consideration all
prior orders or decrees, any way connected with the final decree.

Thus, an appeal from a decree upon exceptions to a master's report,
relative to the rights of the parties called upon to interplead, which re-
port was made under an order of reference by consent; or an appeal
from a decree allowing costs to the complainant, involves an inquiry
into the decree that the bill of interpleader was properly filed ;

And, consequently, admitting the decree that the bill was properly filed
to be an interlocutory decree, an appeal from the decree, relating either
to the exceptions or costs, brings up the decree that the bill was
properly filed.

If a cause in chancery is set down for a hearing on bill and answer, the
answer denying all the material facts alleged in the bill, it should be
dismissed :

So it should be dismissed, if the answer set up sufficient matter of defence,
consisting of distinct facts by way of avoidance to the bill.

IN ERROR.

ALBANY,
April, 1823.

ATKINSON
v.
MANKS.

To avoid this consequence, the complainant should reply, and give the defendant an opportunity to prove his answer.

A bill of interpleader is not an exception to this rule.

The nature and object of a bill of interpleader considered.

It lies where two or more persons claim the same debt or duty of the complainant, by separate interests.

The complainant should have no beneficial interest in the thing claimed ; And it must appear that he cannot determine the right without hazard to himself.

The complainant must make affidavit that he does not collude with either claimant ;

And bring the money or thing claimed into court.

The amount or origin of the fund claimed, &c. is not the object of inquiry as against the complainant, except in reference to fraud or collusion on his part.

These rules applied to the particular case.

But the amount and origin of the fund may be material, as between those called upon to interplead.

Where one, having funds, accepts a bill of exchange drawn by A, in favour of B, and C claims the same funds, a bill of interpleader will not lie against B and C ; because the acceptor is bound to pay at all events.

But an order drawn by A in favour of B, upon another, for A's *goods* or *the proceeds of his goods,* in the hands of the drawee, is not a bill of exchange, nor equivalent to a bill of exchange.

And if accepted by the drawee for a stated sum, he having no goods or proceeds of the goods of the drawee in his hands, he is not bound by his acceptance ;

For it is without consideration.

So if he accept for a sum beyond the goods or proceeds thereof, there is a want of consideration for the excess.

And if A afterwards draw another order in favour of C, for all A's funds in the hands of the drawee, and both B and C claim certain funds in the drawee's hands, under their respective orders, as belonging to A, and covered by their respective orders, the drawee may maintain a bill of interpleader against the payees ;

And this, though he may have accepted the first order for a certain amount.

To consitute a bill of exchange, it should be for the absolute payment of money only.

If an order be payable in goods, or out of a particular fund, as the proceeds of goods, or be in the alternative, it is not a bill of exchange.

But an acceptance would be evidence of an agreement to pay, which, if without consideration, would be void, even as between the payee and acceptor ;

For the consideration between the drawer and payee would not bind the acceptor.

In an action upon the acceptance of an order drawn for the proceeds of goods, it lies with the payee to shew the amount of the proceeds received by the acceptor.

For a general acceptance of such an order would merely be evidence that the proceeds of the goods, received after the date of the acceptance, were received to the use of the payee.

An order or decree in chancery, entered by consent, is not the subject of an appeal, or rehearing.

So of an order of reference upon which the party appealing has acted, by prosecuting the reference upon the principles prescribed by the order.

If an order or decree appealed from, purport on its face to have been taken by consent of the party appealing, it will be deemed by the court above, on appeal, to have been so taken ;

And they will not hear evidence upon the question whether it was so taken.

If it was, in fact, not taken by consent, the party should have applied to the court below, to have the mistake in the entry corrected.

If a bill of interpleader be properly filed, the complainant is entitled to have his costs allowed him out of the fund in court.

And under special circumstances, it is right to allow the defendants to have their costs respectively, to be deducted from the same fund.

IN ERROR.

· · · · · · ·

ALBANY,
April, 1823.

ATKINSON
v.
MANKS.

APPEAL from the Court of Chancery. *Samuel Booth,* a manufacturer, residing in the neighbourhood of *Leeds,* in *England,* in the month of *September,* 1811, commenced the shipping of manufactured goods to this country, and consigned them to *William Manks,* a merchant in the city of *New-York,* to be sold by him on commission. These shipments were continued until the month of *November,* 1819, when they ceased, in consequence of *Booth's* affairs having become embarrassed.

On the 30*th* of *November,* 1818, *Manks* stated the accounts between *Booth* and himself, when a balance of upwards of $16,000 was found to be due to *Booth,* which was carried to his credit in a new account, of which he was duly adviser, and of which he approved. Subsequently to *November,* 1818, large consignments of goods were received and disposed of by *Manks,* and large remittances were made by him to *Booth,* on general account, but no general statement or settlement of their accounts was afterwards made. The last remittance from *Manks* to *Booth* was made on the 17*th* day of *February,* 1820. From the proofs and admissions which were made in the progress of the cause in the Court below, it appeared that upon a final adjustment of *all* the accounts between *Manks* and *Booth,* there remained in the hands of *Manks,* after the remittance of the 17*th* of *Februa-*

IN ERROR.
......
ALBANY,
April, 1823.

ATKINSON
v.
MANKS.

*ry*, 1820, a balance of property or funds belonging to *Booth,* to the amount of $4598,36. After *Booth* became embarrass- ed, some of his creditors in *England* pressed him for orders on his funds in this country ; and on the 8*th* day of *January,* 1820, he gave to *Miles Atkinson,* the appellant, an order on *Manks* for £1642 sterling, *payable in the goods of Booth, or the proceeds thereof.* This order was presented on the 16*th* day of *March,* 1820.

On the 1*st* day of *July,* 1820, another order from *Booth,* in favour of *William Holroyd,* one of the respondents, bear- ing date the 9*th* day of *May,* 1820, was presented to *Manks.* This order *was for all the money that might be coming to Booth from any quarter in this country.*

On the 16*th* day of *March,* 1820, when the order in fa- vour of *Atkinson* was presented, *Manks* had no unappropri- ated goods belonging to *Booth,* but if the $4598,36 due from *Manks* to *Booth,* were exclusively proceeds of *Booth's* goods sold by *Manks,* then it was conceded that *Atkinson* was entitled to that fund by virtue of his order. If that fund, however, was not the proceeds of goods sold by *Manks* for *Booth,* it was not disputed that, from whatever other sources it may have been derived, it was covered by the order of *Holroyd.*

It was admitted, both by *Manks* and *Holroyd,* that $1613,- 47 of that fund were the proceeds of *Booth's* goods, and subject to *Atkinson's* order. And *Manks,* accordingly, on the 19*th* day of *August,* 1820, paid that amount to *Atkin- son's* agents. The balance of $2984,39, was claimed both by *Holroyd* and *Atkinson,* and payment demanded by each ; and *Atkinson,* on the 28*th* day of *September,* 1820, commen- ced a suit against *Manks,* in the Supreme Court of this state, for the recovery of that sum. *Holroyd* forbade *Manks* to pay it to *Atkinson,* and also threatened *Manks* with a suit, to compel him to pay it upon the last order.

Under these circumstances, *Manks,* on the 5*th* day of *Oc- tober,* 1820, filed in the Court of Chancery a bill of inter- pleader against *Atkinson* and *Holroyd.* He stated in this bill, that he was ready and willing *to pay the $2984,39, to the party legally entitled thereto ;* but that he was not able

IN ERROR.
.......
ALBANY,
April, 1823.
ATKINSON
v.
MANKS.

to determine to which of them it of right belonged, as both claimed it ; and he offered to bring it into Court, to be disposed of as the Court might direct, in order that he might not be involved in trouble and litigation ; and prayed an injunction against *Atkinson's* suit, and that *Atkinson* and *Holroyd* might be decreed to interplead, and settle their respective rights.

As to the origin of the $2984,39, in his hands, he stated that it was composed of $222,22, cash, borrowed by him from *Booth*, in *England ;* of $2716,28, received from the house of *H. & G. Vail*, of *Troy*, being the proceeds of certain cloths and cassimeres which had been shipped by *Booth* direct to them, and the price of which had been paid to *Manks*, as the agent of *Booth*, for the purpose of being remitted or paid over to him ; and the sum of $46,39, balance of interest due to *Booth*.

The injunction was allowed, and the money paid into the Court of Chancery, where it now remains.

*Atkinson*, in his answer, denied that the balance in *Manks'* hands was composed of the money borrowed from *Booth* in *England*, and of that received from the *Vails ;* and alleged that those monies had been remitted by *Manks* to *Booth ;* and that after the remittance of the last portion of those monies to *Booth*, *Manks* had received large sums of money as the proceeds of *Booth's* goods sold by him ; and that the balance in his hands was wholly composed of such proceeds.

He further alleged, that *Manks*, by letters to *Sewall, Williams & Co. Atkinson's* agents, had accepted *Booth's* order; and that, relying upon such acceptance, he had been induced to forego efforts to obtain security from *Booth*.

*He admitted that Holroyd may have made some claim to the money in Manks' hands, but had no particular knowledge thereof.*

It is not necessary to give the correspondence relied on as an acceptance of the order, the Court having decided, as will be seen, that this would not, in itself, have amounted to a binding acceptance, though absolute in its terms.

The answer then insisted upon a full examination *into all* the accounts between *Manks* and *Booth*, so far as might be

necessary to ascertain what goods, or proceeds of goods, were in *Manks'* hands, *when his* (*Atkinson's*) *order was presented, or at any subsequent period.*

*Holroyd*, in his answer, admitted that the statement of facts in *Manks'* bill was substantially correct ; that the sum of $2984,89, due from *Manks* to *Booth*, consisted of the items mentioned in the bill ; that he had made repeated applications to *Manks* for payment of his order, which *Manks* had always evaded, on the ground that *Atkinson* claimed all the funds of *Booth* in his hands:

The cause was set down for hearing by the solicitor of *Manks, upon bill and answer, without any testimony having been taken ;* and on the 13*th* day of *November*, 1821, the Chancellor made his first decree. By this decree, he determined *the bill of interpleader to have been properly filed ; and, at the request of Atkinson and Holroyd, Manks not objecting to it,* a reference to a Master was ordered, to take and state the account between *Manks* and *Booth*, up to the day of filing the bill, allowing proper deductions for the charges, expenses and commissions of *Manks*, so as to show what moneys were in his hands, applicable to the order of *Atkinson*, and what applicable to the order of *Holroyd*.

In pursuance of this order, the reference was prosecuted before the Master; and on the 29*th* day of *March*, 1822, he made his report. The report coincided precisely with the statement of *Manks* in his bill, as to the balance due from him to *Booth*, but was in direct hostility to the bill, with respect to the sources from which that balance was derived. In the Master's opinion, the $222,22, borrowed by *Manks* from *Booth*, in *England*, and the $2716,28, received from the *Vails*, had been in part remitted to *Booth*, and the residue applied by *Manks* in re-payment of advances made by him to *Booth ;* so that neither of those sums constituted any part of the $2984,89, paid by *Manks* into the Court of Chancery. He was accordingly of opinion that the whole of that sum was applicable to the order of *Atkinson*, and so reported.

The report was filed on the 3*d* of *April*, 1822. The solicitor of *Atkinson* entered an order for its confirmation.

*Holroyd* excepted to this report :

IN ERROR.
.......

ALBANY,
April, 1823.

AT IN: ON
v.
MANKS,

1. Because the whole sum in *Manks'* hands was reported to be applicable to the order of *Atkinson*; whereas it was properly subject, and applicable wholly, to the order of *Holroyd.*

2. Because certain proceeds of goods sold the *Vails*, and received by *Manks* on the 21*st* of *July*, 1820, amounting to $750, should have been exclusively applied to the order of *Holroyd.*

The exceptions were argued, and a rule entered by consent, that the question of costs be submitted to the Chancellor, in order that he might make a final decree in the cause.

On the 17*th* of *July*, 1822, a final decree was pronounced.

The Chancellor allowed so much of the first exception, as is applicable to the $222,22, borrowed by *Manks* from *Booth*, and the whole of the second exception, making an aggregate of $972,22, of the fund in Court, which he ordered to *Holroyd*, upon his order, and the residue to *Atkinson.* He decreed *Manks* his costs, to be paid out of the fund.

The appeal was by *Atkinson*, from so much of the decree of *November* 13*th*, 1821, as adjudged the *bill of interpleader to have been properly filed;* so much as directs the Master *to take and state an account between Manks and Booth, up to and including the 5th day of October*, 1820 ; so much as instructs the Master, in taking an account, *to allow proper deductions for the charges, expenses and commissions of Manks;* so much *of the final decree*, as allows the exceptions, either in whole or in part, taken by *Holroyd* to the Master's report ; and also *to so much of the final decree as awards costs to the complainant.*

The additional facts, so far as they are material to the points raised and decided, are stated at large in the opinion of the Court.

His Honour, the Chancellor, assigned the reasons of his decree ; but as his argument related principally to the decision upon the exceptions to the Master's report, and was little more than an examination of the facts in the cause, its insertion is not deemed material.

IN ERROR.

ALBANY,
April, 1823.

ATKINSON
v.
MANKS.

The principal questions of law, upon the above case, were, 1. Whether the bill of interpleader was properly filed. 2. Whether the reference to the Master was proper. 3. Whether the costs of *Manks* ought to have been allowed and deducted from the funds in Court.

The cause was argued by *H. Bleecker & H. Sedgwick*, for the appellant ; and *C. Graham*, for *Manks*, and *S. Jones*, for *Holroyd*, the respondents.

*For the appellant, it was argued*, that the bill of interpleader should have been dismissed. Every material allegation contained in it, was denied by the answer; no replication was filed, and on the hearing upon bill and answer, the latter should have been received as true. Had *Manks* intended to contest its truth, he should have filed a replication, and given the appellant an opportunity to prove his answer.(a)

(a) *Barker v. Wild*, 1 *Vern.* 140.

The bill was vexatious. The order in favour of the appellant had been virtually accepted by *Manks*, and there was no pretence for filing a bill of interpleader.(b)

(b) *Coop. Pl.* 45. *Dungey v. Angove*, 2 *Ves. jr.* 310, 311,

The reference was not proper to settle the rights of the appellant and *Holroyd*. The Chancellor should have awarded an interpleader, and not a reference to a Master.

At any rate, under the circumstances of the case, no costs should have been awarded out of the fund in Court.

(c) *Vid. Newl. Pr. Albany ed.* 173.

If the counsel stood committed by acting under the decree for a reference,(c) yet they may go back to the decree, which declares that the bill of interpleader was properly filed. It was not necessary to appeal from that decree within 15 days. It was a final decree. (*Travis v. Waters*, 12 *John.* 500.) In the last decree, it is again declared, that the bill was properly filed. Indeed, the first decree is connected with the subsequent ones, and is brought under review, by an appeal from the last.(d)

(d) *Jaques v. Trustees of the M. E. Church*, 17 *John.* 548.

*For Manks, it was argued*, that the object of the bill of interpleader was to get rid of any controversy upon the ti-

tle to the funds. From the time of the decree upon the bill and answer, *Manks*, who is a mere stake holder, was no longer to be considered as a party in the cause.(*e*) It was indifferent to him whether the parties interpleaded or not. Whether an interpleader or a reference should be awarded, was a matter exclusively between *Atkinson & Holroyd.* At any rate, the order of reference was interlocutory and not the subject of an appeal after 15 days.(*f*) It has all the characteristics of an interlocutory order. It does not dispose of the fund. It directs an account to be taken by a Master, who is to report with all convenient speed.(*g*) It was treated as interlocutory by the counsel of *Atkinson & Holroyd.* They proceeded in the reference, and summoned *Manks* before the Master, and a rule was afterwards taken for confirming his report ; and they consented to a final decree as to the costs.

The appellant is estopped by his own act, to appeal from the decree of reference. This decree was not only by consent, but was acted upon by the appellant.

The bill of interpleader was properly filed.(*h*) It was to avoid litigating the title to the fund with two conflicting claimants—the usual ground of this bill.

The account of *Manks* being perfectly fair, and all opposition to it being withdrawn before the Master, his right to costs follows.(*i*)

The order in favour of *Atkinson*, was not a bill of exchange ; and an acceptance would not bind for an amount beyond the fund to which it referred.

*The argument for Holroyd* was principally an examination, whether the Chancellor had decided correctly upon the exceptions to the report. It was insisted, that bills of interpleader are set down for a hearing upon the pleadings, to see whether there is a proper case for interpleader. It is not the ordinary case of setting down a cause on bill and answer, without replication. The order is interlocutory ; and if the party mean to contest the principles of the decree, he must appeal within the 15 days, or he is barred.

IN ERROR.
.......
ALBANY,
April, 1823.

ATKINSON
v
MANKS.

(*e*) 1 Harris. Pr. 115. Anonymous, 1 Vern. 351.
(*f*) 1 R. L. 134. Blake's Ch. 177
(*g*) Blake's Ch. 220, 221, 273.

(*h*) Blake's Ch. 31, 32. 1 Harr. Pr. 112, 117.

(*i*) Sholbolt v. Biscoe, 1 Harr. Pr. 116, 17.

IN ERROR.
••••••••
ALBANY,
April, 1823.

ATKINSON
v.
MANKS.

*Reply.* It is denied, that setting down a bill of interpleader on the pleadings, differs from the ordinary case. The answer in this case sets up the specific fact, that the order in favor of the appellant had been accepted. This goes to the foundation of the bill. (*j*) Ought not the appellant to have had an opportunity of proving it upon a replication ?

(*j*) *Cowtan* v. *Williams*, 9 *Ves.* 107. *Clark* v. *Byne*, 13 *id.* 386. (*k*) 2 *Ves.* *Jun.* 304.

In this case the order was accepted. Being so, it stands on the same footing as a bill of exchange, on the latter being absolutely accepted. *Dungey* v. *Angove*(*k*) is a case precisely like this in principle. The decree was premature. The bill being denied by the appellant, the Chancellor should not have recognized its truth, till it was proved.

If, as contended, *Manks* was out of the question, on the first decree being pronounced, the order of reference was nugatory, and therefore erroneous. It was not proper, except to ascertain the truth of the bill ; and the facts reported by the Master shew that the bill was fraudulent, and that the fund was not a proper subject of interpleader. If the order was by consent, and was acted upon by the appellant, it was not intended by him as a substitute for an interpleader, to which he was entitled ; and his consent ought not to bind him beyond the scope and intention of it. An inquiry by the Master beyond the object of the order could have no effect.

It is perhaps not necessary to shew that the first decree was a final one ; for an appeal from the last opens for consideration all prior or interlocutory orders or decrees in any way connected with the merits of the final decree. This doctrine is essential to the proper administration of justice. That the final decree was for costs, is no objection. The

(*l*) 1 R. L. 134.

statute(*l*) gives us the same right to appeal from a decree, settling the right to costs, as from any other. The right was not

(*m*) 12 *John.* 500.

denied in *Travis* v. *Waters.*(*m*) This case also settles the

(*n*) *id.* 508.

distinction between an interlocutory and final decree.(*n*)

(*o*) *Pillans* v. *Mierop*, 3 *Burr.* 1673.

There was a consideration for accepting the appellant's order, without regard to the extent of the fund.(*o*) Any damage to another, or suspension or forbearance of his right, is a sufficient consideration, and will make a contract binding,

though no actual benefit accrue to the party contracting.(*p*) An absolute promise to accept is equivalent to an actual acceptance, without regard to the equitable circumstances between the drawer and acceptor.(*q*) The acceptor cannot allege the want of effects(*r*); and though the order in this case was not technically a bill of exchange, yet it has the same effect, except in the quality of negotiability. An acceptance to pay out of a particular fund is as binding as a general acceptance. So if payable on a contingency.(*s*) Could a party be relieved in equity on the ground of a mistake as to effects?

SUTHERLAND, J. A preliminary objection is taken by the respondents, to so much of the appeal as relates to the decree made on the 13*th Nov.* 1821. It is contended that this decree was *interlocutory*—not *final;* and that the appeal should, therefore, have been entered within 15 days after the making of the decree.

By that decree, the Chancellor determined the bill of interpleader to have been properly filed. According to my view of the case, that was the material, and only material point, so far as the complainant was concerned, which the Court were called on to decide; and the moment the decree was pronounced, the object was obtained, which the complainant sought by his bill. It is fairly to be deduced from the decree itself, that it would have ended there, had not the parties consented that the Court below should proceed in that suit, to determine the matters in controversy between them.

The subsequent parts of the decree, which order a reference to a Master, and establish the principles upon which it is to be conducted, are to be considered as a substitute, adopted at the request of the parties, for an interpleader suit between *Atkinson & Holroyd*, to determine their respective rights to the fund in Court; and also, as a substitute for any proceedings which it might otherwise have been necessary for *Atkinson & Holroyd* to adopt, to test the correctness of *Manks'* statement, as to the aggregate amount due from him to *Booth*.

---

*Margin notes:*

IN ERROR.

ALBANY, April, 1823.

ATKINSON v. MANKS.

(*p*) *id.* 1673-4. (*q*) *Per Ld. Mansfield, in Mason* v. *Hunt, Doug.* 299. (*r*) *Chit. on Bills,* 51. (*s*) *Carlos* v. *Fancourt,* 5 *T. R.* 482.

Decree that bill is properly filed, all that the complainant seeks.

Reference, by consent, a substitute for interpleader.

IN ERROR.
••••••
ALBANY,
April, 1823.
⌣⌣⌣
ATKINSON
v.
MANKS.

If it were necessary, therefore, for the purpose of sustaining the appeal, I should have no hesitation in saying that the decree of *Nov.* 13*th,* 1821, in so far as it decided that the bill of interpleader was properly filed, was a *final decree, within the meaning of the statute regulating appeals, the merits and principles of the cause having been determined by that decision.*

But it is unnecessary to resort to that part of the appeal at all, " for the appeal from the *last* and final decree in the cause, necessarily opens for consideration, all prior orders or decrees any way connected with the final decree." This was settled in the case of *Jaques* v. *The Methodist Episcopal Church,* (17 *John.* 548.) The appellant in this cause appeals from so much of the final decree as regards the allowance of the exceptions taken by *Holroyd* to the Master's report ; and also from so much thereof, as awards costs to the complainant.

In determining these points, it is necessary to consider every other material point in the cause.

Whether the bill of interpleader was properly filed, is a question necessarily drawn into consideration, by the appeal from that part of the decree, which awards costs to the complainant ; for, if it was necessary for him to file his bill, then his costs were rightfully awarded to him. If it was not a proper case for a bill of interpleader, then it was a proceeding in his own wrong, for which the defendants below ought to pay. The appeal from the last decree, therefore, brings before this Court, the whole merits of the cause.

'Whether the bill was properly filed.' The first question which I shall discuss, is, *whether the decree of the Chancellor was erroneous, in determining the bill of interpleader to have been properly filed.*

It is contended on the part of the appellant, that his answer denied every material allegation in the bill ; that no replication having been filed to the answer, it must be taken as true, throughout ; that the complainant below, having brought the cause to hearing upon bill and answer only, the evidence before the Chancellor shewed the bill to be false, and instead of decreeing that it was properly filed, he should have dismissed it with costs.

It is a well settled rule, that there cannot be a decree against an answer upon the facts charged in the bill and denied in the answer, unless the bill be supported by two witnesses, or one witness and circumstances. (2 *Atk.* 19. 1 *Bro. Ch. Cas.* 52. 1 *John. Ch. Rep.* 459.)

IN ERROR.
.......
ALBANY,
April, 1823.
ᘛ ᘀ ᘛ
ATKINSON
v.
MANKS,

It is also a well established principle in Chancery proceedings, that *a distinct fact set up in answer by way of avoidance,* is to be taken as true, without proof, unless the complainant, by a replication, put the fact in issue, and give the defendant an opportunity to prove it. (*Green* v. *Hart*, 1 *John. Rep.* 590, *per Spencer, J.*)

If the answers in this case, therefore, clearly and unequivocally deny those allegations in the bill, upon which alone, it can be sustained ; or, if they set up new matter in avoidance of those allegations, then the appellant is right in saying that the bill should have been dismissed.

This brings us to the consideration of the material object of a bill of interpleader.

Nature and object of bill of interpleader.

It is defined to be, " a bill exhibited, when two or more persons claim the same debt or duty from the complainant by different or separate interests ; and he, not knowing to which of the complainants he ought, of right, to pay or render it, fears that he may be damaged by the defendants, (as by paying his money to a wrong hand) and, therefore, exhibits his bill of interpleader against them, praying that the Court may judge between them, to whom the thing belongs, and that he may be indemnified.

" It claims no right in opposition to those claimed by the persons against whom the bill is exhibited, but only prays the decree of the Court, to decide between the rights of those persons for the safety of the complainant." (*Cooper's Equity, Plead.* 456. *Harrison's Ch. Pr.* 96. *Mad. Ch.* 172-3.)

The nature of the allegations, therefore, in every bill of interpleader are, 1. That two or more persons have preferred a claim against the complainant ; 2. That they claim the same thing ; 3. That the complainant has no beneficial interest in the thing claimed ; and 4. That he cannot do one, without hazard to himself, to which of the defendants the thing of right belongs.

The material allegations therein.

To prevent this proceeding from being resorted to for the purpose of giving an advantage to one of the claimants over the other, the complainant must annex to his bill an affidavit, that there is no collusion between him and any of the parties ; and he must bring the money or thing claimed into Court, so that he cannot be benefitted by the delay of payment, which may result from the filing of his bill.

Amount of fund not the subject of inquiry ;

It seems to me, from this short consideration of the nature and object of a bill of interpleader, that the *amount of the fund or matter* in the hands of the complainant, upon which hostile claims are alleged to have been made, can never be a substantial object of inquiry upon such bill. That amount must be taken to be as stated by the complainant, and cannot be controverted by the answers, for the

Except to shew fraud.

*purpose of having it adjudicated* upon. It may, unquestionably, be denied by the answer, for the purpose of shewing fraud or collusion, on the part of the complainant, and, I humbly conceive, for no other purpose.

Whether material allegations denied.

Are, then, the material allegations in the bill denied by this answer of *Atkinson ?* It is not pretended that they are denied by *Holroyd ;* for he expressly admits, " that the statement of facts contained in the complainant's bill, is correct and accurate."

Answer examined.

Does *Atkinson* deny that he and *Holroyd* have both preferred claims against *Manks ?* He expressly admits that he obtained from *Booth* the order of *Jan.* 8, 1820, upon *Manks* for £1642, as set forth in the bill ; that he forwarded the same to Messrs. *Sewall, Williams & Co. of Boston, who presented the same at the time stated in the complainant's bill.* He admits that a suit upon the order had been commenced against *Manks* by his attorneys, the Messrs. *Sedgwicks.*

In relation to *Holroyd's* claim, he admits that the complainant, *Manks,* in the early part of *August,* 1820, informed *Sewall,* (*Atkinson's* agent) that an order had been presented to the complainant from *Booth, for all Booth's* property in the *hands of the complainant,* but does not mention in whose favour the order was drawn. In another part of his answer he says, " he thinks it probable that *Holroyd* may

have made some claim to the proceeds of goods shipped by *Booth* to the complainant ;" but he has no particular knowledge of this. In no part of his answer does he deny, what is expressly alleged in the bill, that *Holroyd* had forbidden *Manks* to pay over the fund to *Atkinson*, and *had threatened him with a suit upon his own order.* The fact, therefore, that *hostile* claims to the same matter or thing, have been made upon *Manks*, by persons capable of prosecuting those claims, is, not only *not denied*, but is admitted by the answers of both defendants. I say the *same matter or thing ;* for the balance of *Atkinson's* order, exceeding the amount in *Manks'* hands, and the whole of that amount being claimed as applicable to that order, it is apparent, that if any thing is claimed under *Holroyd's* order, it must be the same thing that is claimed by *Atkinson.*

It is not pretended by the answers, that *Manks* has any interest in the controversy, or is any thing more than a mere stakeholder, unless his character is changed by the alleged acceptance of *Atkinson's* order, which I shall hereafter consider.

Is the right, then, of *Atkinson* to the fund in question so clear, upon the bill and answer, that *Manks* must have known that he could incur no hazard by paying it to him ? This question is sufficiently answered by the fact that *Holroyd* had forbidden him to pay it to *Atkinson*, and threatened him with a suit to recover it upon his own order. After that, he was not bound to exercise any judgment upon the subject.

The Lord Chancellor, in *Langston* v. *Boylston*, (2 *Ves. Jun.* 109,) says, " a party claiming no right in the subject, is doubly vexed by having two legal processes going on against him, in the names of different persons, at the same time ; he comes upon the most obvious equity to insist that those persons claiming that, to which he makes no claim, should settle that contest among themselves and not with him." He remarks, that " it may be said in all cases of interpleader, as it has been said in this ; ' *Stand the action ; if A proceed first, and you have a good defence against him, that puts an end to his claim ; if A succeed, that is a defence*

IN ERROR.
.......
ALBANY,
April, 1823.
⌇⁓⌇
ATKINSON
v.
MANKS.

*against the claim of B.'*    That is precisely the situation in which the plaintiff ought not to be placed."

But it is said that *Manks'* allegation in his bill, that the sum of $2938,50, in his hands, arose from money loaned to him by *Booth* in *England,* and from payments made to him as *Booth's* agent, by *H. & G. Vail,* of *Troy,* and that no portion of that sum is the proceeds of goods shipped to him by *Booth,* is denied in the answer ; that the Chancellor, therefore, at the hearing of the bill and answer, should have dismissed the bill, it having been proved false in so essential a point.

The origin of the fund not material.

If the view which I have already taken of the nature and object of a bill of interpleader, be correct, it follows, that the manner in which the fund in *Mank's* hands was composed, whether of the proceeds of *Booth's* goods or of money borrowed from *Booth,* could never be the subject of consideration, or inquiry, in determining whether the bill of interpleader was properly filed.

That was a question between parties claiming the fund.

That was the matter in controversy between *Atkinson* and *Holroyd,* the matter which they were to discuss, if they should be decreed to interplead ; the very matter, the discussion and decision of which, *Manks* ought to get rid of by his bill of interpleader.    Whether the allegations in the bill, therefore, upon that point, were true or false, is perfectly immaterial, except, as I have before remarked, upon another point, as affording evidence of fraud or collusion on the part of the plaintiff.

Whether order was accepted.

But again : it is strongly urged that it is apparent upon the bill and answer, that *Manks* accepted the order in favor of *Atkinson ;* and that the bill should have been dismissed upon that ground.

If a bill of exchange, and accepted, bill should have been dismissed.

I concur in the opinion, that if the order was a bill of exchange, and there was an absolute acceptance of it, by *Manks,* the bill should have been dismissed : because, by the acceptance, *Manks* would be liable to pay the order at all events.    *Atkinson's* right, therefore, to enforce payment from *Manks* would be clear beyond all doubt, whether the fund in *Manks'* hands was the proceeds of goods or not.    In that question, therefore, *Atkinson* would cease to have any in-

terest. The claims of *Atkinson* and *Holroyd* would not then be in collision. The one would rest on the ground *of the acceptance;* the other on the ground that *Manks* had funds in his hands belonging to *Booth*. In such an event there could be no pretence for awarding an interpleader between them. If *Manks* accepted the order, and it was equivalent to a bill of exchange, he ceased to be a *mere stakeholder*, and became a party in interest to the controversy; for being compelled to pay *Atkinson* at all events, he was deeply concerned in shewing that the funds in his hands were proceeds of goods; for unless he could shew that, he would be compelled to pay *Holroyd's* order also.

But this was not a bill of exchange. It was not an order *for the payment of money only*, which is an indispensable requisite in a bill of exchange. Besides : it was in the alternative, *for goods or the proceeds thereof*. If it had not been in the alternative, but had been for £1642, *proceeds of goods*, it would not have been a bill of exchange, because payable *upon a contingency and out of a particular fund*. (*Ch. on Bills*, 37-8. 3 *Wils.* 213.)

Admitting, then, that *Manks* did accept the order; that his letters to *Sewall, Williams & Co.* were equivalent to the ordinary mode of accepting a bill of exchange, which is by writing, " accepted," upon the bill, and signing the name to it, it amounted to no more than an agreement or promise on his part to pay the order according to its tenor ; that is, to pay it in *Booth's* goods, or in the *proceeds* of them. If he refused to pay, *Atkinson* could not sue him, as the drawee, of a bill upon his acceptance ; but only upon his agreement, or contract to pay ; and his acceptance could be used as evidence of such agreement or contract. But to sustain his action, it would be necessary for him to aver and prove that *Manks* had in his hands either *goods*, or the *proceeds* of them, belonging to *Booth* ; for, until that was proved, neither a violation of his agreement, nor a consideration for his promise, would be shewn. The order being to pay from that fund only, his acceptance could not make him liable beyond it. (*Kyd on Bills*, 58. *Maber* v. *Massias*, 2 *Bl. Rep.* 1072. *Carlos* v. *Fancourt*, 5 *T. Rep.* 482. *Alves* v. *Hodgson*, 7 *T. Rep.* 237, *Chit. on Bills*, 12, 63, 154. *Kyd on Bills*, 74.)

*Margin notes:*

But was not a bill of exchange,

Acceptance binds only to extent of funds. And payee must shew extent.

Acceptor liable on his special agreement only, whereof the acceptance was proof.

IN ERROR.
•••••••
ALBANY,
April, 1823.

ATKINSON
v.
MANKS.

Or suppose *Atkinson's* action was for money had and received to his use; *Manks'* acceptance would be evidence, that whatever monies had come to his hands *from the proceeds of Booth's* goods, since the date of the acceptance, belonged to *Atkinson*, and were received to his use. But the main question whether any, and if any, what amount of such proceeds had, in truth, come to his hands, would be left to be made out by *Atkinson* in proof, before he could recover.

Now, that is the precise question upon which the respective rights of *Atkinson* and *Holroyd* depend. If the funds in *Manks'* hands, are the proceeds of goods, they belong to *Atkinson*; if not, they belong to *Holroyd*. Whether they are the one or the other, is a matter of indifference to *Manks*. He, therefore, prays that they may be compelled to settle it between them. And whether he has accepted the order of *Atkinson* or not, does not, in my judgment, affect his right to such a decree.

*If an order, amounting to a bill of exchange, is drawn upon another, and he accepts it without consideration, it is a nudum pactum.*

*The consideration between the drawer & payee, would not bind the acceptor.*

But it is said, that the letters from *Manks* to *Sewall, Williams & Co.* of the 17th of *March*, and the 2d of *June*, 1820, are more than a bare acceptance of the order; that they amount to an absolute, unconditional promise to pay £1000 upon that order. Waiving the question of fact—could a recovery be had against *Manks*, upon such a promise, if, in truth, he had no funds belonging to *Booth*, being the proceeds of goods, either in law or equity, unless *Atkinson* could show either fraud or special damage? The order not being a bill of exchange, the consideration which passed between *Booth* and *Atkinson* could not enure to the support of the promise by *Manks*. *Atkinson* would, therefore, be compelled to aver and prove, that *Manks* had in his hands either goods or the proceeds of goods belonging to *Booth*, to the amount of £1000, or he could not recover, the promise being without consideration, and therefore void. Even by such a promise, therefore, *Manks* would not be precluded from asking the Court of Chancery to compel *Atkinson* and *Holroyd* to interplead.

Upon every view of the case, therefore, I think the Chancellor was right in determining, upon the pleadings, that the bill was properly filed.

Whether the decree of *November* 13*th*, 1821, was erroneous, in ordering the Master, upon the reference, " to take and state the account between *Manks* and *Booth*, up to the time of filing the bill," and in directing him " to allow proper deductions for the charges, expenses and commissions of *Manks*," I do not consider open for inquiry. The decree, in every thing that respects the reference, purports to have been made by consent. If the Chancellor was mistaken in supposing *Atkinson's* counsel to have consented to it, application should have been made to him to have the mistake, as to the consent, corrected. That course not having been pursued, this Court cannot try the question whether there was a mistake or not. We must take the fact to be as stated in the decree, and entirely disregard the suggestion of a mistake. No appeal or re-hearing lies from a decree made by consent. (2 *Mad. Ch.* 577. *Bradish* v. *Gee*, *Ambl.* 229.)

But, independent of the consent, *Atkinson* is precluded from objecting to the order of reference, by having acted under it. If that order established principles, or gave instructions to the Master, which he thought erroneous, he should have appealed from it at once, instead of prosecuting the reference. After having tried the practical operation of those principles and instructions upon his rights, it is too late for him to object to them. Any error that the Master may have made in the application of those principles, in the enquiry before him, is open for correction upon the coming in of his report. But the principles, themselves, are the law of the Master, necessary to be settled before he enters upon the reference, and therefore admitted to be settled by the parties who prosecute and conduct the reference. (Vid. 9 *John.* 468, per *Spencer*, J.)

The next point which I shall consider is, whether the decree is erroneous in deciding that $972,22, of the fund in Court, are not the proceeds of *Booth's* goods, and are therefore covered by the order of *Holroyd*.

[Here his Honour examined the evidence, and concluded, that the decree of the Chancellor was erroneous, in allowing so much of the first exception to the Master's report as related to the $222,22, borrowed by *Manks* from *Booth* ;

Whether the funds were the proceeds of *Booth's* goods.

but that the decree upon the exceptions was right in all other respects.]

The only remaining point relates to the costs. The bill of interpleader having been properly filed, it necessarily follows that the complainant is entitled to his costs out of the fund in Court. This is obviously just and equitable, and so are all the authorities since the case of *Hendry* v. *Key*, (1 *Dick.* 291. Vid. 6 *Ves. Jun.* 418. 9 *id.* 107. 1 *Mad. Ch.* 148.)

Under all the circumstances of this case, I see nothing improper in allowing the costs of *Atkinson* and *Holroyd*, also, to be deducted from the fund, neither of them having been entirely right or entirely wrong in their claims. This was a matter of sound discretion with the Chancellor, and I think that discretion has been properly exercised.

Upon the whole case, therefore, I am of opinion, that the decree of the Chancellor should be affirmed, except so far as it relates to the £50, and that, with respect to this, it should be reversed.

The rest of THE COURT were unanimously of the same opinion, except as to the disposition of the fund between *Atkinson* and *Holroyd*. SAVAGE, Ch. Justice, went into the evidence, at large, on this point, and concurred with the Master in his report, being of opinion that *Atkinson* was entitled to the whole fund ; and that, consequently, *Holroyd* should be denied his costs. But as the discussion upon this point was a mere examination of facts, and was not supposed by the Judges to involve any one question of law, it is, for that reason, omitted.