EASTERN RAILROAD. COMPANY *vs.* LEVI BENEDICT & another.

A agreed with B to deliver him a quantity of goods, to be paid for in stock of a corporation, and subsequently drew an order upon him to give seventy shares of that stock to C, which B promised C orally to pay. *Held,* in an action by C against B, that he could recover damages upon the promise to the extent of the value of the goods actually delivered by A to B under the contract at the time the promise was made; and that the fact that part of the goods was defective could not avail B if he kept and used them, and promised to deliver B the stock notwithstanding; but that a settlement between A and B, after B's promise to C, by which the whole seventy shares mentioned in the order were credited to B, would not entitle C to recover the residue of the order.

ACTION OF CONTRACT to recover damages for noncompliance with the following order:

"September 24th 1850. Messrs. Benedict & Warren, Salem, Mass. Gentlemen: Please give Mr. D. A. Neale, president of the Eastern Railroad Company, stock in the Salem Gas Light Company, at par, to the amount of seven thousand dollars, and place the same to my account. Yours respectfully,

"Leonard Fuller."

The parties waived trial by jury, and the case was heard by

*Hoar*, J., who gave judgment for the plaintiffs, subject to the opinion of the full court on the following case :

" It was not satisfactorily proved that there was any promise made by the defendants to accept an order to be drawn upon them by Fuller, before the order mentioned in the declaration was drawn by Fuller, and presented to them for acceptance.

" This order was presented to the defendants within a few days after its date, and they then said it was good, and made an oral promise to accept and pay it. At the time the order was so presented, there was a contract between Fuller and the defendants, by which Fuller had agreed to furnish to the defendants fourteen thousand feet of iron pipe for the price of $ 6,670, payable by the defendants in the stock of the Salem Gas Light Company, at par, under which contract pipe had been delivered to the amount of $ 3,355.65 when the order was presented.

" Between the 23d and 29th of October 1850 the order was again presented by the plaintiffs to the defendants, and an oral promise was then again made by the defendants to accept and pay the same. At that time there had been delivered by Fuller to the defendants in pipes, furnished under the contract before named, and in other articles, to the amount, in the whole, of $ 6,391.48, and the plaintiffs had paid to Fuller substantially the whole consideration for which the order was given to them by Fuller at its date.

" On the 3d of December 1850 there had been delivered to the defendants by Fuller, under the contract and otherwise, iron pipe and other articles to the amount of $ 7,654.36. Some of the iron pipe, so delivered, was not perfect, according to the contract, but was received and used by the defendants without knowledge of its imperfections. Such imperfections were discovered between the 15th of December 1850 and the 1st of February 1851, and a claim was made by the defendants on Fuller for compensation for damages caused by such imperfections; and such imperfections continued to be discovered during the spring of 1851, and like claim to be made.

" About the 1st of February 1851 the defendants and Fuller settled an account, in which the defendants were credited bv

Fuller with the seventy shares of stock for which the order was given by Fuller to the plaintiffs, and with five more shares of the stock, which the defendants then delivered to Fuller; and the defendants gave Fuller a note for $100, the balance appearing by said account to be due to Fuller, which note was afterward paid by them. There was no allowance made in said account for any defects in pipe, or damages caused thereby.

" There was no evidence of any demand for the stock before the day of the date of the writ, and the stock on that day was worth $100 a share, and the same was then demanded."

*G. M. Browne & C. M. Ellis*, for the plaintiffs.

*J. P. Healy*, for the defendants. 1. The order in suit is not a bill of exchange or negotiable paper, and therefore the law merchant is not applicable to it. Story on Bills, § 53, and cases cited. *Coolidge* v. *Ruggles*, 15 Mass. 387.

2. At the time of the alleged promise by the defendants to accept the order, the iron pipe which Fuller had bargained to the defendants had been delivered only in part, and all that he had delivered, or agreed to deliver, did not amount to $7,000. The promise to accept therefore, if made, was an agreement for the sale and delivery of so much stock ; and that promise, to be valid, must be in writing. Rev. Sts. *c.* 74, § 4. *Eastern Railroad* v. *Benedict*, 10 Gray, 212.

3. The promise, not being valid at the time it is alleged to have been made, did not afterwards become so by the transactions between Fuller and the defendants. The plaintiffs were in no way privy to those transactions, and pipe of the description required by the contract between Fuller and the defendants never was delivered by him to them to the amount of $7,000.

HOAR, J. It was held, when this case was last before the whole court, that the oral agreement of the defendants to accept the order of Fuller would be valid and not within the statute of frauds, if, at the time of such agreement, the stock had been paid for by Fuller, by the delivery of the iron pipes. It would, in that case, be merely an agreement to deliver to the plaintiff stock which had been already purchased and paid for by Fuller. *Eastern Railroad* v. *Benedict*, 10 Gray, 212.

Upon the new trial which was then ordered, it appeared that, at the last time the order was presented to the defendants, and an oral promise to accept and pay it was made by them, iron pipes under the contract, and other articles, had been delivered by Fuller to them, to the amount of $ 6,391.48. The other articles were of small amount and value, and consisted of castings to be used with the pipes, which were delivered, charged and received as if they had been included in the contract.

The question then arises whether the order and its acceptance constitute a contract between the parties, which is divisible. The defendants had in their possession stock in the gas company, which had been purchased and paid for by Fuller, and which they had agreed to deliver to him, or to his order, to the amount of $ 6,391.48. In this state of things, an order drawn by Fuller upon the defendants, directing them to deliver to the plaintiffs stock at par to the amount of $ 7,000, is accepted, and a promise made to deliver the stock accordingly. We think that this contract may be divided, and that the plaintiffs may recover upon it to the extent to which there is a sufficient consideration, and to which the statute of frauds does not interpose a bar. It is true that the order was for the entire sum ; and the plaintiffs would not have been obliged, by the agreement with Fuller, to take a partial acceptance or payment. But if no objection is made by the plaintiffs, the defendants may be bound, so far as their engagement creates any legal obligation. In *Rand* v. *Mather*, 11 Cush. 1, it was determined that an agreement, which is void in part under the statute of frauds, is not necessarily void *in toto;* and the true doctrine was declared to be, that "if any part of an agreement is valid, it will avail *pro tanto*, though another part of it may be prohibited by statute; provided the statute does not, either expressly or by necessary implication, render the whole void; and provided, furthermore, that the sound part can be separated from the unsound, and be enforced without injustice to the defendant;" overruling the case of *Loomis* v. *Newhall*, 15 Pick. 159.

This order was not a bill of exchange, because it was payable, not in money, but in stock of the gas company. To make

its acceptance a contract binding the defendants, there must therefore have been a consideration for their contract. The consideration, for the agreement to deliver to the plaintiff stock belonging to Fuller in their hands upon Fuller's order, would obviously be the discharge of the obligation to deliver it to Fuller himself. This consideration would not extend beyond the amount of the stock which they held; but to that amount it would be a good consideration; and the agreement, being capable of apportionment, may be enforced to that extent. *Atkinson* v. *Manks,* 1 Cow. 707. *Parish* v. *Stone,* 14 Pick. 198.

The objection that the stock had never become the property of Fuller, because the pipes which he furnished were defective, and not such as his contract required, cannot prevail, because the defendants had received and used the pipes, and had consented to accept them so far as to agree to deliver the stock.

It was argued for the plaintffs, that the settlement between the defendants and Fuller, which was made subsequently to the acceptance of the order, and in which the defendants retained the whole amount of the seventy shares of stock referred to in the order, was equivalent to a new promise to pay the whole of the order. But this was a transaction between the defendants and Fuller, to which the plaintiffs were not a party.

*Judgment for the plaintiffs for $ 6,391.48, and interest from the date of the writ.*