THE PEOPLE'S SAVINGS BANK v. WILLIAM LOOK, EXECU-
TOR, ETC., ET AL.

*Bill of interpleader—When proper—Gift causa mortis.*

1. A man and woman made a deposit in a bank, with instructions
   to pay the money to *either* of the depositors.   The man died,
   and his executor demanded the money, and the administrator
   of his wife's estate also demanded it, under a claim that it was
   her sole property when deposited by her husband, and the sur-
   viving depositor demanded it as her property.   And the right
   of the bank to file a bill of interpleader is affirmed, as the only
   action by which it could in one proceeding end the whole con-
   troversy, and determine who should receive the fund; citing
   *Moore v. Barnheisel*, 45 Mich. 500.

2. Where a plaintiff claims the ownership of property through a
   gift *causa mortis*, for which she brings suit after the death of
   the alleged donor, the burden is upon her to clearly establish
   such ownership.

Appeal from Wayne.   (Brevoort, J.)   Argued January
11, 1893.   Decided March 10, 1893.

Bill of interpleader.   Defendant Burkhart appeals.   Decree
affirmed.   The facts are stated in the opinion.

*Keena & Lightner*, for complainant.

*Charles Flowers*, for appellant, contended:

1. Complainant incurred an independent liability to appellant, and
   the rule has always been that a party seeking relief by bill of
   interpleader must have incurred no independent liability to
   either claimant; citing Adams, Eq. 202; *Sprague v. Soule*, 35
   Mich. 35.

2. The claim of defendant Stoll, if any exists, is one against the
   estate of John Kocher, if he wrongfully appropriated the
   money, or a demand at law against the appellant, if she has
   no lawful right to it; and, if Kocher misappropriated the money,
   the right of action at law for such misappropriation continued
   after his death, and it resolved itself into a dispute between

his estate and that of his wife, and claims against an estate ·cannot be tried in a court of chancery; citing *Shannon v. Shannon*, 48 Mich. 182; *O'Connor v. Boylan*, 49 Id. 209; *Aldrich v. Annin*, 54 Id. 230; *Grand Chute v. Winegar*, 15 Wall. 373; 1 Pom. Eq. Jur. § 176.

*Harry F. Chipman*, for defendant Look, contended:

1. Three things are necessary to a gift *causa mortis:*
        *a*—It must be made in view of the donor's death.
        *b*—The donor must die of the peril.
        *c*—There must be a delivery.
        —Citing *Grymes v. Hone*, 49 N. Y. 17; *Emery v. Clough*, '63 N. H. 552; *Kiff v. Weaver,* 94 N. C. 274; *Smith v. Ferguson*, '90 Ind. 229; *Parcher v. Savings Inst.*, 78 Me. 470; *Taylor v. Henry*, 48 Md. 550.

2. Personalty requires as complete manual delivery as the nature of the article will admit of; citing *Hatch v. Atkinson*, 56 Me. 324; *Crittenden v. Insurance Co.*, 41 Id. 442; *Love v. Francis*, 63 Id. 181; and as to the necessity of a change of possession, see *Kipp v. Lamoreaux*, 81 Mich. 299.

*John G. Hawley*, for defendant Stoll.

LONG, J.    This is a bill of interpleader.    The original bill was filed by complainant against two of the defendants, William Look and Caray Burkhart.    It set forth that on the 25th of April, 1890, John Kocher and Caray Burkhart deposited in the People's Savings Bank $1,500, and left their signatures, with the instruction that the said fund should be payable to either John Kocher or Caray Burkhart; that on the 10th of May, 1890, $400 more was deposited; that, previous to the death of Kocher, $650 had been drawn out, leaving a balance in the bank of $1,288.99; that John Kocher died in the month of September, 1890, and that William Look, his executor, had demanded the whole of said money as belonging to the estate of John Kocher; that Caray Burkhart had claimed the money as belonging to herself.

Soon afterwards the complainant filed an amended bill against the three defendants, William Look, Julius Stoll, and

Caray Burkhart. The amended bill sets forth the same facts as to the claims of Look and Mrs. Burkhart, and in paragraph 4 sets forth the claim of the defendant Stoll, to wit, that Stoll, during the lifetime of John Kocher and Mary Ann Kocher, was their agent in Detroit, and as such agent had forwarded to John Kocher, at Omaha, the sum of $3,356.66, which was the money of Mary Ann Kocher, and that John Kocher had appropriated this money to his own use; and that Stoll claimed that the money in complainant's bank was a portion of the money so appropriated, and that said Stoll threatened the bank to institute proceedings against said bank to collect said money unless the same was paid over to him.

The defendant Caray Burkhart answered the original bill, and the three defendants filed their separate answers to the amended bill. The answers of Mrs. Burkhart to the two bills were substantially the same, and set forth that she was a sister of Mary Ann Kocher; that, shortly before her death, said Mary Ann Kocher, in expectation of death, gave to her and John Kocher about $2,000 in cash, with the request that both of them should have the use of said money during their lives, but, should either of them die before the money was exhausted, the survivor should have the residue. The answer of William Look was that the said money was the individual money of John Kocher, and belonged to him solely; that the money never belonged to Mary Ann Kocher, his wife, but was earned and accumulated by himself. The answer of Julius Stoll was that, during the lifetime of John and Mary Ann Kocher, he (Stoll) had acted as their agent, and, in accordance with written instructions, had sent to John $3,366.08, of which amount $3,356.66 belonged to Mrs. Kocher, and that the money in the People's Savings Bank was a portion of the said $3,356.66.

No decree of interpleader was ever made in the case.

The taking of testimony was commenced in open court, before Judge Gartner, and a portion of the testimony was taken in his presence, and the residue was taken before the stenographer. After the testimony had been completed and written out, it was submitted to Judge Brevoort, and a decree was rendered by him, finding the fund in the bank to be "a parcel of the assets of the estate of Mary Ann Kocher, deceased, and that the said Julius Stoll is now entitled to demand and receive the same;" and providing, further, that the bank, upon the presentation of a certified copy of the decree, pay said money to said Stoll.

After the testimony had all been taken, counsel for defendant Burkhart moved to strike out all testimony of the claim of Julius Stoll, administrator, upon the ground that such claim, if a valid claim at all, is a claim against the estate of John Kocher, deceased, and can only be proven against said estate in the probate court, and the court of chancery has no jurisdiction to hear and determine the matter.

Counsel further contends:

1. That complainant was not in a position to ask the court to require defendants to interplead.

2. That, if the position of defendant Stoll is correct,— that this money was appropriated by John Kocher,—an action at law would lie against him in his lifetime, and against his estate after his death; that in the latter event the claim must be proven in the probate court, and the court of chancery has no jurisdiction.

3. That, the money standing in the bank in the name of Caray Burkhart, if in fact said money had never been given her by her sister, an action at law can be brought against her for money had and received, and the bank could in that event be garnished.

No decree or order of interpleader was asked for by the complainant, as is claimed, for the reason that it was considered unnecessary, as the rights of all the parties could be adjudicated and protected in and by the final decree. No

question was raised by the answer of defendant Burkhart but that the bill of interpleader was properly brought. She admits by her answer that the matters set forth in the 1st, 2d, and 3d paragraphs of the bill, which set out the claims of the respective parties against the complainant, are true. Mrs. Burkhart and the executor of John Kocher were each demanding the moneys. By the amended bill a new party defendant was added, who finally prevailed in the court below.

It is urged, however, that the bank incurred an independent liability to Mrs. Burkhart,—it became her debtor; that, according to the statement in the bill, and not denied by the answer, the money. was deposited with the express agreement that it should be paid to Caray Burkhart or John Kocher, and, Kocher having died, she alone was entitled to draw it; that the bank had no right to refuse to pay it to her, and put her to the expense of a suit; that the bank was not a bailee, but a debtor, and the fund was not a parcel. It is further urged that the bank was in no danger of being compelled to pay it twice over, as Stoll could not maintain a suit against the bank to get possession of the fund; that, if he has any claim, it exists against the estate of John Kocher, or a demand at law against the defendant Caray. Burkhart. It is admitted that there might be some reason for attempting to interplead the defendants Look and Caray Burkhart, because it might be claimed that the estate of John Kocher would be entitled to a portion of the money on deposit, and it might require evidence to determine that question; but it is claimed that the action of the bank in making Stoll a party was without excuse, and can have no foundation in law. It is further insisted that, as the money stands in the bank in the name of Caray Burkhart, if she has no right to it, she is a debtor to the estate of Mary Ann Kocher, and can be sued in *assumpsit*. Therefore, in

either case, the right of trial by jury would remain, and a court of law can do complete justice, both as to the matter in controversy and the relief to be granted, and a court of equity ought not to interfere.

We think these positions are not well taken. The bank is simply the custodian of the fund, and claims no interest in it, and calling the bank a "debtor" instead of a "bailee" makes no difference in the situation in this regard. Defendant Burkhart claims the whole of the fund as survivor of herself and John Kocher. Defendant Look claims it as executor of John Kocher. Defendant Stoll claims, it as administrator of the estate of Mary Ann Kocher. Each of these parties could undoubtedly have brought suit against the bank for it, and three respective verdicts might have been awarded. In *Detroit Savings Bank v. Burrows*, 34 Mich. 153, it was determined that a bank was liable in an action by the real owner of a fund, although it was deposited in the bank by a third person. Stoll was properly made a party to the bill, he having set up a claim to the fund, as the administrator of Mary Ann Kocher; and the bill of interpleader was the only action by which the bank could in one proceeding end the whole controversy, and determine who should receive the fund. If it paid it over to any one of the claimants, other litigation would or might arise, and the complainant be involved in needless litigation. A court of chancery was the only forum in which the rights of all the parties could be protected in one proceeding, and it is no objection that one or more of the parties had only an equitable interest in the proceedings. *Burtnett v. Bank*, 38 Mich. 630; *Underwood v. Bank*, 141 Mass. 305 (4 N. E. Rep. 822); *Bartlett v. Remington*, 59 N. H. 366. The facts stated bring the case clearly within the principle of interpleader laid down in *Moore v. Barnheisel*, 45 Mich. 500.

The decree entered, while not in express terms an order

of interpleader, yet, in effect, holds the bill properly filed, and directs what party is entitled to the fund under the facts shown. The parties claiming the fund being all before the court, the rights of the parties are fully adjudicated and the complainant fully protected under the decree made. The claim that a separate decree or order of interpleader should have been entered can have no force under the present circumstances. It would undoubtedly have been better practice, but the decree made, in effect, amounts to such an order. *Atkinson v. Manks,* 1 Cow. 691.

It is claimed, further, that the court was in error in finding that the fund belonged to the estate of Mrs. Kocher. It is insisted that, under the testimony, it is clearly shown that the fund was given to Mrs. Burkhart and John Kocher by Mrs. Kocher during her last illness; that it was a gift *causa mortis* to them, and to the survivor of them, which, upon the death of John Kocher, came to defendant Burkhart.

On the hearing in the court below, defendants Stoll and Look gave evidence that a proceeding was before the commissioners on claims in the probate court in the matter of the estate of Mary Ann Kocher, in which defendant Caray Burkhart was a witness. She presented a claim against that estate, and testified in reference to it. It appears that Mary Ann Kocher died in Omaha. At that time she and her husband, John Kocher, were living with Caray Burkhart and her husband. Mrs. Kocher had something over $3,000 in the bank, which she sent her husband to draw out and bring to her. She was then sick in bed. She gave something like $1,500 to religious and charitable purposes, and the balance—about $2,000—was kept by her in currency in a box or trunk in her bedroom. It is stated by Mr. Stoll, in his testimony in the present case, that, in the proceeding before these commissioners, Mrs. Burkhart testified that this money was in a trunk in Mrs. Kocher's

possession, and that she told Mrs. Burkhart that, if her husband (Mr. Kocher) should survive Mrs. Burkhart, he was to have the money, and, if Mrs. Burkhart survived Mr. Kocher, she was to have it, and that she was to have possession after Mrs. Kocher's death.    Judge Look, who heard Mrs. Burkhart testify before the commissioners, stated that she testified that, at the time of the death of Mrs. Kocher, she still had the money in her possession, and that it was in a trunk, but that she (Mrs. Burkhart) and John were to have the money at her death, and the survivor of them was to take it; but that Mrs. Burkhart made no claim on that examination that the money had been given over to her possession by Mrs. Kocher before she died.    Mr. Arthur R. Tripp, an attorney, who represented one of the heirs of Mrs. Kocher in that proceeding, testified that Mrs. Burkhart made no claim on that examination that the money was given into her possession by Mrs. Kocher before she died.    One of the commissioners on claims testified that Mrs. Burkhart was asked on her examination there whether anything was done by Mrs. Kocher at that time to deliver the money,—whether it was given to her,—and she said, "No, it was in the box;" that her testimony was that nothing in the nature of. a delivery had taken place at any time before Mrs. Kocher died.

On the present hearing, Mrs. Burkhart testified that, seven or eight days before Mrs. Kocher died, she gave her the money in the box in her bedroom, and when she left the room she took the box into her keeping, and had possession of it up to the time Mrs. Kocher died, and had at all times the key to the box after it was so delivered to her; that the money was given to her by Mrs. Kocher to have for herself and John Kocher and the survivor of them.    The husband of Mrs. Burkhart testified that the money was given her by Mrs. Kocher as her own; that

his wife took possession of it about eight days before Mrs. Kocher died,—took it to her own room. On his cross-examination, he was asked if Mrs. Kocher gave her husband any interest in the fund, and he stated that she did not; that it was given to his wife as her own, and not to John Kocher jointly with his wife, or to the survivor; that every dollar of it belonged to his wife.

It is evident to us that the story told by Mrs. Burkhart is not supported by the circumstances surrounding the case, and that what she now states about the delivery of the money to her by Mrs. Kocher was not claimed by her when on examination before the commissioners. The testimony of her husband does not agree with her own. She claims a joint gift with John Kocher; her husband claims a gift to his wife absolutely and solely. On Mrs. Burkhart's examination before the commissioners, she did not claim a delivery of the money so as to constitute a gift *causa mortis*, if the testimony of Julius Stoll, Judge Look, Mr. Tripp, and the commissioner is believed, but that her sister, Mrs. Kocher, said that she and John Kocher were to have it at her death, and it was to go to the survivor; but she did not claim that any delivery was made to her. There is no question but that it was Mrs. Kocher's money. She had no children, but she expected her husband to survive her. He did survive her for over seven months. No claim, so far as appears by this record, that the money was delivered to her, was made by Mrs. Burkhart until after John Kocher died. Death having sealed the lips of Mrs. Kocher, the burden is upon the claimant to clearly establish her ownership to this fund. *Duncombe v. Richards*, 46 Mich. 166. This she has not done.

We think the proofs show that the money did not belong to John Kocher, but to his wife.

The decree of the court below is affirmed, with costs.

The other Justices concurred.