WILLIAM B. DINSMORE, President, etc., Appellant, *v.* WILLIAM
B. DUNCAN et al., Respondents.

| 57 | 573 |
| 110 | 476 |
| 57 | 573 |
| 149 | 536 |
| 57 | 573 |
| 170 ² | 63 |

The negotiability of a United States treasury note is not restrained or
affected by the fact that it is under the treasury seal; nor is it affected
by the fact that the note was issued with the name of the payee left in
blank.

A clause in the note giving the holder the option, upon maturity, to con-
vert it into bonds, does not destroy its negotiability so long as the option
is not exercised; nor is it destroyed by a clause giving the government
the option to pay the interest in coin or in paper money.

A United States treasury seven-thirty note issued with a printed statement
upon the back, in substance, that it was, at maturity, convertible, at the
option of the holder, into government bonds, was indorsed by the holder,
"pay secretary of the treasury for redemption," and sent by express
to the secretary. It was stolen from the express company, the indorse-
ment erased so that no evidence of it remained and then it was sold to
bankers, who purchased for value in the regular course of business. In
an action for the conversion of the note, *held*, that, prior to the indorse-
ment by the owner, the note was negotiable; that the printed statement
formed part of the instrument; that the holder was not prevented from
making his election to take bonds prior to the maturity of the note; that
the said indorsement and the delivery to the express company was an
exercise of the option and destroyed the negotiability of the note, the
owner, thereafter, having only a claim against the United States for the
proper amount of bonds; that, even if the owner had the power to with-
draw this act, the purchaser or his transferee could not maintain that
the transaction was incomplete; that the erasure by the thief of the
indorsement was a mere act of spoliation and in no way affected the
instrument or the rights of the owner, and that the purchaser acquired
no title.

(Argued May 8, 1874; decided September term, 1874.)

APPEAL from judgment of the General Term of the Court
of Common Pleas for the city and county of New York, in
favor of defendants, entered upon an order denying plaintiff's
motion for judgment on a verdict, setting aside the verdict,
and directing judgment in favor of defendants.

This action was brought for the alleged conversion of a
(seven-thirty) note of the United States, issued under the act

of Congress of March 3, 1865 (13 U. S. Stat. at Large, 468), which, when issued, was substantially in this form :

" $1,000.

" Three years after date the United States promise to pay to the order of

one thousand dollars,

with interest at 7 3-10 per cent, payable semi-annually in lawful money."

(Signed by the proper officers of the treasury<br>and with the treasury seal.)

Across the face was printed the following :

" The government reserves the right of paying, in coin, the interest on this note at the rate of six per centum per annum."

On the back was printed :

" At maturity convertible, at the option of the holder, into bonds redeemable, at the pleasure of the government, at any time after five years, and payable twenty years from July 15, 1868, with interest at 6 per centum per annum, payable semi-annually in coin."

The note was, on the 22d of May, 1868, delivered by its then holder and owner, the First National Bank of New Albany, Indiana, to the American Express Company for remittance to Washington. It was in a package with other bonds directed to the secretary of the treasury. It was indorsed by the cashier of said bank :

" Pay secretary of treasury for redemption.

" W. MANN, *Cashr.*"

The package containing this note was, on the night of May 22d, 1868, stolen from the express company and taken to Liverpool, England, where, on the 25th day of June, 1868, the indorsement having been obliterated or extracted by some chemical process so that it could not be observed, it was, in good faith and for full value, purchased by the firm of L. Benas & Sons, bankers, who filled in the name of defendants'

firm, as payees; on the twenty-sixth remitted it to the defendants, bankers and their correspondents in New York, for conversion. The defendants sent the full value of the note to Benas & Sons on July 8th, 1868, without notice affecting the validity of their title, and they subsequently converted it by accepting substituted security in conformity to the provisions of the act of 1865. The bank received the value of the note from, and assigned its interest therein to, the express company, of which plaintiff is president.

The jury on trial, under the direction of the court, rendered a verdict for plaintiff subject to the opinion of the court at General Term.

*Clarence A. Seward* for the appellant. The note in suit was not subject to the common-law rules applicable to commercial paper. (*Crouch* v. *Credit Foncier*, L. R. [8 Q. B.], 386.) It was not a negotiable note. (Byles on Bills [10th ed.], 67 *n ;* Parsons on Bills, 26; Edwards on Bills, 139, 208; Story on Bills, §§ 43, 61; *Glyn* v. *Baker*, 13 East, 509; *Clark* v. *F. L., etc., Co.*, 15 Wend., 256; *Steele* v. *Oswego, etc., Co.*, id 65; *Clark* v. *City of Janesville*, 4 Am. L. R., 591; *Dymon* v. *Lawrence Co.*, 37 Penn., 358; *Burgh* v. *Preston*, 8 T. R., 483; *Noonan* v. *Bradley*, 9 Wall., 394; *Atkinson* v. *Max*, 1 Cow., 707; *Cooke* v. *Satterly*, 6 id., 108; *Matthews* v. *Houghton*, 2 Fairf., 277.) The erasure of Mann's indorsement was sufficient to destroy the note even in the hands of an innocent indorsee for value. (*Benedict* v. *Cowden*, 49 N. Y., 396; *Waite* v. *Pomeroy*, 2 Mich., 425.) The indorsement transferred to the United States all property in the note. (*U. S.* v. *Barker*, 1 Paine, 156; *Dugan* v. *U. S.*, 3 Wheat., 172.) It terminated the contract to pay in money. (*Rex* v. *Reeves*, 2 Leach, 808, 816.) It rendered the note imperfect as a negotiable instrument and no one could restore its negotiability without the consent of Mann and the government. (*Ledwich* v. *McKim*, Ct. of Appeals MSS.) If the note was negotiable then Mann's indorsement was a restrictive indorsement and took the note

without the law merchant. (*Archer* v. *Bk. of England,* Doug., 615 ; *Sigourney* v. *Lloyd,* 8 B. & C., 622 ; 5 Bing., 525 ; *Tuttle* v. *Barrington,* 8 Taunt., 559 ; *Brown* v. *Jackson,* 1 Wash., 512 ; *Sweeney* v. *Easter,* 1 Wall., 166 ; *Nicholson* v. *Chapman,* 1 La. Ann., 222 ; *Robertson* v. *Kensington,* 4 Taunt., 30 ; *Lee* v. *Chilicothe B. Bk.,* 1 Bond, 387 ; *Wildman* v. *Wildman,* 9 Ves., 173.)

*W. W. McFarland* for the respondents. The note in suit was never indorsed in any sense in which that term applies to negotiable paper. (2 Parsons on Bills, 1, 2, 4 ; Smith's Mer. Law, 316, note 2 ; Chitty on Bills, 140, 156 ; 14 Abb. Pr., 278 ; *Comm.* v. *Em. In. Svgs. Bk.,* 98 Mass., 12.) Until the payee was nominated, the note was an imperfect instrument. (1 Pars. on Bills, 33.) A *bona fide* purchaser of negotiable paper is entitled to recover, though the person from whom he received it obtained it by fraud, theft or robbery. (*Gould* v. *Legee,* 5 Duer, 260 ; *Hall* v. *Wilson,* 16 Barb., 548 ; *Goodman* v. *Simons,* 20 How. [U. S.], 364 ; *Wookey* v. *Pole,* 6 C. L., 327 ; *Birdsall* v. *Russell,* 29 N. Y., 220 ; *B. B. Bk.* v. *Hodge,* 35 id., 65 ; *Raffael* v. *Bk. of England,* 17 C. B., 161 ; *Goodman* v. *Hall,* 2 A. & E., 870 ; *Foster* v. *Pierson,* 1 C., M. & R., 849 ; *Steenhart* v. *Boker,* 34 Barb., 436 ; *Bk. of Bengal* v. *Fagin,* 7 Moore P. C., 72 ; *Ingham* v. *Primrose,* 97 C. L., 82 ; *Young* v. *Grote,* 4 Bing., 253.) Plaintiff having failed to perform its duty in carrying the note, and having lost it in consequence of that failure, cannot recover it or its value. (*Phillips* v. *Thurn,* L. R. [1 Com. Pls.], 472 ; *Young* v. *Grote,* 13 E. C. L., 420 ; *Lickbarrow* v. *Mason,* 2 T. R., 70 ; *Fatman* v. *Lobach,* 1 Duer, 354 ; *Bk. of Buffalo* v. *Kortwright,* 22 Wend., 348 ; *Putnam* v. *Sullivan,* 4 Mass., 45 ; *McDonald* v. *Muscatine,* 37 Iowa ; *Sturge* v. *Starr,* 2 M. Y. & K., 195.)

DWIGHT, C. Under the facts in this case, the question is : Who is the owner of the note, the express company, which has acquired the rights of the bank, or the defendants ?

The instrument is plainly negotiable. There was some criticism on the argument, founded on the proposition that it was only the interest that was payable in lawful money. If all the language affecting the interest had been omitted, there would have been a distinct promise on the part of the United States to pay $1,000. The true construction is to regard the words affecting the interest as parenthetical. The note should read in this manner: "The United States promise to pay to the order of      one thousand dollars (with interest at $7\frac{3}{10}$ per cent, payable semi-annually), in lawful money." The words "lawful money" qualify the word "dollars," in which the note itself is to be paid.

There are several objections urged to the negotiability of this instrument. One is, that it is under the seal of the United States treasury. There are, no doubt, decisions that an instrument under seal is not negotiable. These cases refer to private obligations between individuals. (*Clark* v. *Farmers' Manufacturing Co.*, 15 Wend., 256; *Steele* v. *Oswego Cotton Manufacturing Company*, id., 265.) They are not to be extended to the case of public securities like those issued by the government, and intended to seek for a market throughout the civilized world. The seal was not placed there to restrain their negotiability, but rather to stamp them as genuine, wherever they might be in circulation. Another objection is, that the instrument, on its face, was not payable to any particular person, but that the name of the payee was left blank. This fact does not affect the negotiability of the note. Any holder has the right to fill in his name in the blank space, and thus make the note payable to himself. (*Cruchley* v. *Clarance*, 2 M. & S., 90.) Until that is done, it will circulate as though payable to bearer. (1 Pars. on Notes and Bills, 33 ; 2 id., 448 ; *Crutchly* v. *Mann*, 5 Taunt., 529 ; *Greenhow* v. *Boyle*, 7 Blackf., 56 ; *Attwood* v. *Griffin*, Ryan & M., 425.)

Again, it is objected that the note is in the alternative, and that, accordingly, it does not fall within the definition of a negotiable instrument. To this effect are cited : *Atkinson* v.

*Manks* (1 Cow., 691); *Cook* v. *Satterlee* (6 id., 108); *Matthews* v. *Houghton* (2 Fairf. [11 Me.], 377); Story on Bills (§ 143). But in these cases the alternative was with the *debtor*, so that it could not be said that the instrument was payable absolutely and at all events. No case was cited, nor is it believed can any be found, in which, where the note is payable absolutely, as far as the debtor is concerned, and the creditor has an option to convert the obligation of the debtor into another and different one, it is held to be not negotiable, so long as the creditor has not exercised his option.

The only point on which any doubt would seem to arise would be whether the reservation, on the part of the debtor, of the right to pay the interest in coin instead of lawful money would destroy negotiability. This reservation, plainly, does not affect the principal; that is payable absolutely. Nor does it affect the payment of the interest in money, both kinds of currency, coin and paper, being equally lawful. The only question is, whether an *alternative* right, on the debtor's part, to pay interest in coin or paper destroys negotiability. The agreement to pay interest is a mere incident or accessory to the debt itself. (*Florence* v. *Drayson*, 1 C. B. [N. S.], 584; *Florence* v. *Jenings*, 2 id., 454; 2 Parsons on Bills, 397, note *v*, and cases cited.) It is a maxim of the law that an accessory does not draw with it the principal but rather follows the nature of the latter. (*Accessorium non ducit sed sequitur suum principale*, Broom's Maxims, 203; Co. Litt., 159, *a*, 151, *b*.) Under these rules, it would seem that the option to pay another rate of interest could not affect the negotiability of the note itself, since, independent of the clauses concerning interest, it has every element necessary to make it negotiable. The result of the discussion is, that until the creditor has exercised the option of demanding bonds, conferred on him by the statute in accordance with the contract, the note was negotiable paper; and if it had been stolen, prior to that time, and had been passed to a purchaser for value, he could have held it as against the lawful owner.

It is now necessary to consider the effect of the indorsement made by Mr. Mann, the cashier, on the note for the purpose of conversion into United States bonds. This will be discussed in the outset as though the indorsement was there when the bonds were negotiated to Benas & Sons. The obliteration of the indorsement will be subsequently considered.

It cannot be successfully disputed that the printed statement on the back of the note, to the effect that it was convertible into bonds at the option of the holder, formed a part of it, and that the whole contract between the United States and the holder was to be derived from taking into consideration the statements and representations both on the face and the back of the note  The holder, certainly, could have urged this in an application to the government to give him bonds for his notes. (*Overton* v. *Tyler*, 3 Penn. St., 346.) It is there said that a " memorandum indorsed on a note, payable to bearer, is incorporated with it." *Benedict* v. *Cowden* (49 N. Y., 396) holds that a memorandum upon a note made contemporaneously with and delivered with it, and intended as a part of the contract, is a substantive part of the note, and qualifies it the same as if inserted in the body of the instrument, and with it constitutes a single contract. It cannot be material where the memorandum is found, whether on the front or on the back of the instrument. This must be particularly the case where the instrument is issued under a general statute, and where similar notes are largely in circulation, and familiar to all men engaged in the purchase of commercial paper. No one can complain that the rule is rigorously applied as no injustice can be experienced from it. When Mr. Mann indorsed on the notes the words: " Pay to the secretary of the treasury for conversion or redemption," thus exercising the option given him by the contract, the case fell under the rules applied to cases of election. It is a well settled legal principle that an election may be given in a contract either to an obligor or obligee. The case of *Neele* v. *Reeve* (2 Siderfin, 107) is a good early illustration. A

covenanted with B that A or his son C, or either of them, should work with B at the grinding and polishing of glass. It was held that B had the election to require either of them to do the stipulated work.

An election once made is conclusive and irrevocable. (*Brown* v. *Royal Ins. Co.*, 1 Ellis & Ellis, 853 ; *Lawrence* v. *Ocean Ins. Co.*, 11 J. R., 241, 264; S. C., 14 id., 55, 56.) In the last case the chancellor said : " If a man has an election to do and demand one of two things, and he determines his election, it shall be determined forever. \* \* \* If A gives B one of the horses in his stable, according to the instance given in Coke, B has his election to take which he pleases, as no one in particular was designated by A ; but having elected one, all will agree that he cannot return it and take another." So in *Layton* v. *Pearce* (Douglas, 15), the defendant had received of G one pound six shillings, on condition that if a certain lottery ticket should come up a blank or a prize on the next day, he would deliver to G an undrawn ticket, or pay him twenty pounds. Lord MANSFIELD, in behalf of the court, said, that they were of opinion that if the option had been in G, and if he had made his election to take the twenty pounds, he would have put an end to the alternative, and have converted the agreement into an absolute contract for the payment of money. It is equally plain that if he had elected to take the undrawn ticket, there would have been, after such election, no right to demand the money. That would make the case very near to that at bar in electing to take the bonds.

There is nothing to prevent the holder from electing to take bonds at any time, though the notes cannot be actually converted into bonds until maturity. Until an election is exercised, they remain treasury notes; when that occurs their function is at an end, and the holder has only a claim against the United States for the proper amount of bonds. This is a *chose in action* and not negotiable. I think that the holder in the present case exercised its election when, after having made the indorsement, it placed

the bonds in the possession of the express company for transmission to the United States treasury. It has never withdrawn its act, if it has the power to do so. The defendants in the present case having no privity with the parties to the transaction, cannot maintain that it was inchoate or imperfect, or that its effect was different from its apparent intent. Accordingly, if Mr. Mann's indorsement had been on the note when Benas & Son received it, they would have taken it not as negotiable paper, but as an instrument bearing evidence of an election to take bonds.

The fallacy of the defendants' argument consists in the fact, that he regards the indorsement of Mr. Mann as an ordinary commercial indorsement. On that view, a holder whose name was not inserted in the body of the note might, perhaps, be denied the power of making a restrictive indorsement. That is not this case. The indorsement was for *conversion.* Its object was not to enforce or transfer the instrument, but to extinguish it, to destroy its life. When it issued from the hands of the bank it was inert, and formed no more a part of the commercial paper of the country. Had it reached the treasury in the due course of business, it would have been a mere claim for bonds. By the terms of the note itself the *holder* had the option to convert it into bonds. The word "holder" must be construed to mean any one who had lawful title, and cannot be confined to a person whose name was written on the face as payee. It is only as "holder" that a person has a right to fill in the name of a payee, and of course he may, in the same character, do the act which the statute prescribes, and elect to take bonds instead of money.

The final point is, whether the erasure of Mr. Mann's indorsement, by the thief, is material. His act must be deemed to be a mere act of spoliation, having no effect upon the instrument. (1 Greenl. on Ev., § 566.) It certainly could not restore an instrument to negotiability where that element had been lost. The true view is that it leaves the instrument precisely as it was. The law will still read the words: "Pay to the secretary of the treasury

for conversion," on the note as being potentially present. If the erasure had any effect it would be to destroy the note as a negotiable instrument, as detaching a memorandum forming a part of it under the rule in *Benedict* v. *Cowden (supra)*. This view would be adverse to the position of the defendants. The correct rule, however, is that the act of the wrong-doer is a pure spoliation, leaving the previous rights of the parties wholly unaffected. The thief did not, as in the case of stolen notes payable to bearer or indorsed in blank, have even the nominal title. There can be no pretence of any legal ground upon which his act could destroy the plaintiff's right, any more than if he had mutilated the instrument or wholly destroyed it.

The judgment of the court below should be reversed.

All concur.

Judgment reversed, and judgment ordered for plaintiff on verdict.