## CENTRAL NAT. BANK OF CITY OF NEW YORK v. WHITE et al.

*(Superior Court of New York City, General Term. July 5, 1892.)*

ESTOPPEL—ELECTION OF REMEDIES—EVIDENCE.

> Plaintiff's cashier wrongfully appropriated its funds in stock speculation, making purchases of stocks through defendants, stockbrokers, and paying therefor in "cashier's checks" on plaintiff. Defendants, shortly after being informed that the cashier was speculating on his own account, discovered a balance in his favor in the hands of certain brokers, and recovered the same in an action which assumed that the cashier, and not plaintiff, was defendants' customer. *Held* not such an election by defendants to treat the cashier as their customer as to render them liable in an action against them by plaintiff to recover the cashier's checks so paid.

Appeal from judgment on report of referee.

Action by the Central National Bank of the City of New York against Leonard D. White and Charles O. Morris. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before FREEDMAN, DUGRO, and GILDERSLEEVE, JJ.

*Martin & Smith,* (*George A. Strong,* of counsel,) for appellant. *Edwards & Odell,* (*Walter Edwards,* of counsel,) for respondents.

GILDERSLEEVE, J.　The plaintiff, at the times hereinafter mentioned, was, and now is, a national bank, doing business in the city of New York.　In June, 1866, William H. Sandford was its cashier, and continued as such until July, 1869.　The defendants were, and now are, bankers and brokers in stocks and securities in this city.　Between the dates above mentioned, plaintiff made purchases and sales of stocks, securities, and gold through the defendants.　These dealings began prior to 1867, and continued until June, 1869.　They were managed and directed by Sandford, plaintiff's cashier, who gave all orders or directions to the defendants which were brought to defendants' office by the clerks or messengers of the plaintiff.　In the course of said dealings, defendants were constantly receiving cashier's checks, being checks drawn by W. H. Sandford, cashier, upon the plaintiff.　The defendants received in such dealings upwards of 100 of such checks, aggregating half a million of dollars.　Those checks were immediately deposited by the defendants in their bank, and, in the usual course of business, presented to and paid by the plaintiff through the clearing house.　No question or objection to any of these checks was ever made until the commencement of this action.　The plaintiff was in the habit of receiving from its customers stocks, bonds, and securities, which were to be kept subject to their order.　Such securities were in the custody and care of the cashier.　On July 1, 1869, Sandford absconded.　He had taken and appropriated to his own use all the stocks and securities.　Subsequently the plaintiff was obliged to and did make good to its customers the value of such securities.　All the cashier's checks paid to the defendants were entered on the cashier's account on the ledger of the plaintiff, and on said account there were credits against each indicating that the same had been repaid to the plaintiff.　These checks were all actually repaid to the bank, and Sandford's cashier account was kept good.　The account of these dealings on the books of the defendant was headed, "W. H. Sandford, Cashier," at first; subsequently on the ledger the word "Cashier" was omitted.　One account was headed, "W. H. Sandford, Stock Account;" one, "W. H. Sandford, Gold Account;" and one account was headed, "Central National Bank."　All of the cashier's checks paid to defendant were repaid to plaintiff, either by those made against other parties or by moneys paid to plaintiff by Sandford.　This action seeks to recover upon 14 of the checks out of the 100 paid to defendants, as aforesaid, which have been selected by plaintiff's counsel after an examination of defendants' books.　It is claimed by the plaintiff that the moneys represented by these cashier's checks, so paid to defendants, were for use in Sandford's private stock speculations, and that defendants knew actually or constructively what Sandford was doing.　The action was brought in August, 1869, for money had and received by defendants for the use of the plaintiff.　It was first moved for trial in 1887.　When the trial was nearly completed, and in April, 1890, plaintiff, by consent of the defendants, amended its complaint, and added a seventh cause of action.　In this it alleges that the defendants had transactions as stockbrokers, in which they received from one W. H. Sandford various sums of money as security for services to be rendered, or responsibilities to be incurred, or for stocks to be bought or sold by them; that said Sanford paid moneys to defendants in the course of such transactions by his own individual checks, and at other times by means of checks drawn by him upon the plaintiff as its cashier.　The plaintiff further alleges that such cashier's checks could not be rightfully drawn or issued or used by Sandford save in the business of the plaintiff.　But, notwithstanding this, the defendants received certain cashier's checks from Sandford in his individual transactions, and passed the same to his credit.　It then sets forth several checks, aggregating $62,521.88, that were received by the defendants.　The complaint

further alleges that the defendants well knew that Sandford was wrongfully abusing his authority, and was misappropriating moneys of the plaintiff by means of his power and authority as its cashier; and it demands judgment for the said several sums in the various causes of action set forth, aggregating upwards of $139,000, and for interest thereon for upwards of 21 years. The answer of the defendants admits the receipt by them of each of the checks stated and set forth in the complaint, and alleges that each check was so received by them in the transactions had for and on account of, and at the request of, the plaintiff. They further allege that they never knew or suspected that Sandford was dealing on his individual account until after his defalcation had been discovered, and the president of the plaintiff called upon defendants, and so informed them. It appears from the evidence that when plaintiff's president called upon defendants he was permitted to see Sandford's accounts, and informed defendants that Sandford had been speculating on his own account. Shortly after receiving this information from plaintiff's president, the defendants, discovering a certain balance in favor of Sandford individually with other brokers, brought an action against him, and recovered about $2,000 by default, upon the theory that the transactions in question were with Sandford individually, and that he was their customer, and not the bank, the plaintiff herein.

The first position taken by the learned counsel for the plaintiff, in support of his claim herein, is that this action by defendants against Sandford, the judgment therein entered, and the enforcement of that judgment against Sandford's individual property, constituted an election by defendants to consider Sandford as their customer in these transactions; that this election was final and conclusive, and precludes the defendants from insisting in this action that the plaintiff, and not Sandford, was the customer in these transactions in question. The learned counsel claims that this act of defendants established unalterably the important fact in respect of the identity of the party with whom the defendants were dealing; that by such act the defendants proclaimed Sandford to be their customer, the sole party with whom they were dealing; and that such act precludes them from contesting that question in this case. We are of opinion that this legal proposition of the learned counsel for the plaintiff cannot be sustained either by principle or by authority. The doctrine invoked is "the election of remedies." Are the defendants, by claiming in this action that the transactions in question were with the plaintiff, violating any of the well-established principles common to questions of election? We think not, for the reason that there has been no election in this controversy. When the plaintiff's president gave the defendants information that induced them to proceed against Sandford, there was a debit balance of some $2,000. For this the defendants certainly had a claim either against Sandford or the bank. Plaintiff's president told defendants, Sandford was the man. Therefore they sued him, and regained a portion of the money. Two inconsistent courses were then opened to the defendants, one of which they took, and the other of which is the course they now seek to take in this action. The doctrine of the election of remedies is not so elastic as to be stretched and made available beyond the point of precluding the defendants, having sued Sandford, from proceeding for the remainder of the balance against the plaintiff. Thus far we think it might be utilized, but cannot be said to create a remedy in favor of the plaintiff which did not before exist. The relation between the bank and the defendants was fixed before Sandford ran away, and plaintiff's president called upon the defendants. If the dealings have been with the bank, nothing that the plaintiff's president said to the defendants, and no action taken by the defendants in consequence, could change the existing relations. We cannot give our approval to the proposition that the defendants, by their election, not only waived a claim for $2,000, which they might have urged against the bank, but also created a

claim in the bank's favor for the amount of 14 of these cashier's checks, selected from the 100 checks that the defendants had received during these transactions. We do not think that any of the numerous cases cited by the learned counsel for the plaintiff satisfactorily support the proposition. They do not go further than to hold that where a plaintiff has two inconsistent remedies, and adopts one of them, the same plaintiff cannot have recourse afterwards to the other.

In *Fowler* v. *Bank*, 113 N. Y. 450, 21 N. E. Rep. 172, the bank paid money to which plaintiff was entitled to one Finch. On learning this, plaintiff sued Finch for money had and received. Held, by so doing, he ratified the act of the bank in paying Finch, and so could not afterwards disaffirm it, and sue the bank. In *Tuthill* v. *Wilson*, 90 N. Y. 423, which does not bear on the election of remedies, the court having decided the case on other grounds, it was held that the vendor could not enforce his claim against both the principal, when discovered, and the agent who contracted in his behalf. In *Conrow* v. *Little*, 115 N. Y. 387, 22 N. E. Rep. 346, plaintiff, finding the vendee had acted fraudulently, sued him as for a debt, and seized on attachment the very paper he had sold. Held, that this affirmed the contract of sale, and the defendant, the printer with whom the paper had been left to be printed upon, had and could hold his lien upon it as the vendee's property. In *Powers* v. *Benedict*, 88 N. Y. 605, it was simply held that although an action to reclaim goods sold disaffirmed the contract of sale, yet still, if plaintiff only regains a portion, he may still follow the vendee for the balance of their value. In *Moller* v. *Tusca*, 87 N. Y. 166, which was another case where plaintiffs sued to regain possession of property, rescinding the sale, it was held that this was an election, and prevented their making any claim against the vendee as such. In this case they followed the property in the hands of a fraudulent transferee from the vendee. In *Fields* v. *Bland*, 81 N. Y. 239, it was held that the plaintiff, having taken a confession of judgment for goods sold and delivered, the judgment being confessed for the value of such goods, could not thereafter allege that the property (the same goods) belonged to him. In *Hughes* v. *Mining Co.*, 72 N. Y. 207, plaintiff brought an action in Vermont claiming damages as for a conversion of his alleged stock, the company having refused to recognize him as a stockholder. Subsequently he brought this action, claiming dividends on the same stock. Held he had elected his remedy, and treated the stock as converted, and he could not now sue, alleging ownership. In *Wright* v. *Wright*, 72 N. Y. 149, plaintiff and defendant were heirs and next of kin of J., of whose estate defendant was administrator. Plaintiff drew two drafts on defendant, which defendant paid, and on an accounting as administrator he credited himself with their amount as payments to plaintiff on account of his distributive share. Plaintiff brought this action for an account of the rent of real estate collected by the defendant. Defendant set up the sum paid on these two drafts as a counterclaim. Held he had elected to consider them as paid out of the personalty, and he could not apply them now to the realty. In *Dinsmore* v. *Duncan*, 57 N. Y. 573, an action by the American Express Company for conversion of a United States treasury note, it was held that an indorsement by the owner to the secretary of the treasury for redemption destroyed its negotiability. That is all there is in this case. The doctrine of election is discussed by DWIGHT, C., who holds that the indorsement was an election to convert the note into bonds, so that its negotiability was destroyed. In the case of *Morris* v. *Rexford*, 18 N. Y. 552, an action for goods sold and delivered, plaintiff had before this suit brought an action of replevin and retaken the goods. Held, this was an election of his remedy, and the present action could not be maintained. In *Thompson* v. *Fry*, (Sup.) 4 N. Y. Supp. 166, a case submitted under section 1279 of the Code, the controversy was whether plaintiff, as assignee under a voluntary assignment in Ohio, was entitled to

certain goods which had subsequently been attached by the defendant. Defendant had proved his claim under the assignment. Held, that he, at least, had accepted and was bound by the assignment. It will be seen that none of the cases above referred to, cited by the counsel for the appellants, sustains the proposition which he seeks to establish in this case.

This question being disposed of adversely to the plaintiff, it remains to be seen whether or not the plaintiff established by the original facts that defendants had been dealing with Sandford as an individual. We think the findings of fact by the learned referee are amply supported by the evidence and fully warrant the decision he made. There are no exceptions to the admission or exclusion of evidence. The referee's conclusions upon the whole case, and the judgment entered in pursuance thereof, are correct. The judgment appealed from is affirmed, with costs. All concur.