# CLARK *v.* READ.

PROMISSORY NOTES; ENDORSEMENT BY CORPORATION; SPECIAL-
    TIES; DISCHARGE OF ENDORSERS; PRACTICE; OFFER OF
    PROOF.

1. The attachment of the seal of a corporation to its endorsement
    in blank of promissory notes does not convert the instruments
    into specialties, so as to preclude their introduction in evidence
    in an action of *assumpsit* on the notes, especially where it does
    not appear to have been the intention of any of the parties so
    to convert them, and the endorsements of the corporation are
    followed by the endorsements of an individual.
2. Where before the maturity of deed of trust notes the maker
    addresses a letter to the holder requesting an extension for
    *two* years, and the holder endorses on the letter a statement to
    the effect that she is willing to extend the deed of trust for
    *three* years, and does extend it, there is no agreement between
    the holder and maker for an extension such as will discharge
    an endorser of the notes; and an acceptance by the maker of
    the offer of the holder to extend for three years will not be
    inferred from the payment by the maker of interest on the
    notes after maturity, especially where upon the maturity of
    the notes they are duly protested, and suit is commenced in
    due time against all of the parties.
3. An offer is no proof of an agreement, and does not even tend to
    prove an agreement; and when it is sought to give evidence of
    such an offer, and objection is interposed, as it properly may
    be, it is incumbent on the party adducing such evidence to make
    proffer of the other evidence connected therewith which would
    make the former relevant.
4. The omission of the word "by" between the title of the corpora-
    tion and the names of the officers acting for it, does not render
    the endorsement insufficient.

No. 692.  Submitted February 8, 1898.  Decided March 8, 1898.

HEARING on an appeal by the defendant from a judgment
on verdict in an action on two promissory notes.  *Affirmed.*

The COURT in its opinion stated the case as follows:

This is a suit in assumpsit, instituted in the Supreme
Court of the District of Columbia, on December 19, 1896,

by the appellee, Martha M. Read, against one John C. Hurst, as maker, and the two appellants, Jacob P. Clark and the Palisades of the Potomac Land Improvement Company, as endorsers, of two certain promissory notes, one for $7,500, and the other for $3,000, both bearing date on April 1, 1891, and both payable on or before April 1, 1895, with interest thereon until paid at the rate of six per centum per annum, payable semi-annually, and both of which were secured by deeds of trust on certain real estate in the District of Columbia. They were drawn to the order of the appellant company, and were transferred to the plaintiff by that company in due course of business by the the endorsement of the company, which purported to have been made by J. P. Clark, as its vice-president, and E. B. Cottrell, as its secretary, and which was followed by the endorsement of J. P. Clark in his individual capacity. Attached to what purported to be the endorsement of the company was its corporate seal.

The notes came into the hands of Mrs. Read, the appellee, through S. T. G. Morsell, who acted as her agent in procuring investments for her; and the interest continued to be paid regularly upon them. Under date of November 5, 1894, Hurst, the maker of the notes and the owner of the property on which they were secured, addressed a letter to Morsell, in which he stated that he was negotiating a sale of the property, and requested Morsell to procure for him an extension of the notes for two years at the same rate of interest. Morsell sent the letter to Mrs. Read, and she endorsed on the back of it a statement to the effect that she was willing to extend the mortgage for three years from maturity at the same rate of interest, and that she did extend it. The request of Hurst, as will be noticed, was for an extension for two years, while the offer of Mrs. Read was for an extension for three years. Whether their minds met upon the question, and there was a definite agreement between them for an extension for either one or the other

of the two specified terms, is one of the contested questions of fact in the case.

The interest continued to be paid until October 4, 1895; but the security seems in the meantime to have become depreciated in value.

On April 5, 1895, at the maturity of the notes, they were presented to the maker for payment, and were not paid; and notice of their dishoner was on the same day given to Clark and Cottrell, as the vice-president and secretary respectively of the appellant company, and to Clark individually. Subsequently, the notes remaining unpaid, the present suit was instituted.

Judgment seems to have been rendered against the maker of the notes, whether by default or after trial does not appear from the record before us. The two endorsers, the appellants here, pleaded the general issue, and their release from liability by the plaintiff by virtue of the alleged extension granted to the maker.

At the trial, the plaintiff having proved the execution of the notes in question and the endorsements, as above stated, and also the protest thereof, offered the notes in evidence, and they were received over the objection of the defendants, who claimed that there was no sufficient proof of the endorsement by the company, and no sufficient proof of the protest and notice; and also, that the endorsement of the company, being under seal, the notes were thereby converted into specialties, and were therefore inadmissible under a declaration in assumpsit. To the ruling of the court thereon exception was taken by the defendants, and upon that exception three of the six assignments of error are based.

To maintain the theory of the discharge of the defendants from liability by the alleged extension of time given by the plaintiff to the maker of the notes, the defendants offered in evidence the letter from the maker to Morsell, which has been mentioned, and the endorsement thereon of the appellee, both of which, under objection by the plaintiff were

refused by the court. The defendants also offered to show that, after the maturity of the notes, the plaintiff had received interest thereon accruing after such maturity, which offer, under similar objection, was also excluded by the court; and this forms the basis of two of the assignments of error. Some other testimony offered by the defendants was also excluded; but, although exception was duly reserved to the ruling of the court thereon, that ruling is not assigned as error, and it need not therefore be here considered. It would seem to be unimportant in the determination of the main issues of the case.

Upon the conclusion of the testimony, the defendants requested the court to instruct the jury to return a verdict in their favor; which the court declined to do. The court then proceeded to instruct the jury in substantial accord with its rulings upon the admission of testimony; and to this also exception was reserved by the defendants. The refusal of the trial court peremptorily to direct a verdict for the defendants forms the basis of one of the assignments of error.

Verdict and judgment having been in favor of the plaintiff, the defendants have brought the cause here by appeal.

*Mr. Clarence A. Brandenburg* for the appellants:

1. Whether an instrument is a specialty or not, depends entirely upon the fact whether it is under seal. *McKenzie* v. *Ivor*, U. S. Dec. 1833; *Evarts* v. *Kerr*, Rice (S. C.) 212; *Duncan* v. *Hodges*, 4 McCord (S. C.) 239; *Thrasher* v. *Everhart*, 3 G. & J. 246.

"It is the seal and not the acknowledgement of the party that constitutes the deed." 4 N. C. 272; Bac. Abr. Obligations, C., 159; 4 Comyn's Dig. 157; *English* v. *Helms*, 4 Tex. 232. The endorsement in this case must therefore be considered as under seal, and a recovery can only be had against the Palisades of the Potomac Land and Improvement Company as upon a sealed obligation or endorsement. The

declaration in this case is in *assumpsit*, and the note was therefore improperly admitted in evidence over the objection of the defendant. *Magruder* v. *Belt*, 7 App. D. C. 307.

2. Upon due proof of the signatures of the officers of a corporation executing an instrument in the name of the corporation, which appears upon its face to have been made by them or at their direction, its execution will be presumed and the seal affixed presumed to be the seal of the company. In this case, however, there was no sufficient evidence of the endorsement of the notes in suit by the defendant, the Palisades Company. The authorities all say that an endorsement of a note or bill on behalf of a corporation is made by writing the name of the corporation and then immediately following with the signature of the agent making it, with some connecting word showing that the previous signature was made by the agent and is not an independent signature, or there should be some evidence to that effect. Thompson on Corporations, Sec. 5134. In this case there was no connecting word, nor was there any evidence whatever, to show that the persons whose names appeared on the back of the note had in fact either signed or adopted the corporate name of the Pailsades Company with intent thereby to bind said company. The word "by" does not appear upon the note.

The omission of any connecting word, showing that the previous signature of the company was either placed there or adopted by the officers of the company signing, imposed upon the plaintiff the burden of proving either the making or adoption of such signature, and in the absence of such testimony, there was no legally sufficient evidence to justify the admission of the note as against the company. We therefore contend the exception to the admission of the note in evidence should be sustained.

3. The letter, the endorsement thereon by Mrs. Read, and evidence of the payment of interest after maturity, were all admissible, as tending to prove a valid contract between the maker and the holder for the extension of the notes sued

upon for a definite time, at the same rate of interest. Such an agreement would be binding upon the parties and the endorsers would be discharged from liability. See *Reed* v. *Tierney, ante,* p. 165.

*Mr. Reginald Fendall* and *Messrs. R. Ross Perry & Son* for the appellee:

1. There is no evidence upon which a jury could legally find there was an extension for any given period. It is doubtful if there is any evidence tending to show an extension of any character. But admitting there is such evidence, to allow a jury further to infer a definite extension would be to allow them to draw an inference from an inference, and not from established fact. Such a conjecture will not be permitted. *Weaver* v. *R. Co.,* 3 App. D. C. 455; *U. S.* v. *Ross,* 92 U. S. 281; *Manning* v. *Ins Co.,* 100 U. S. 693.

There is a substantial difference between Hurst's request to have an extension for two years, and Mrs. Read's proffer to grant an extension for three years. There can be no doubt that had Mrs. Read sued at the maturity of the note, there would have been no shadow of a defence. Her offer made Nov. 6, 1894, to extend the note for three years, had never been accepted by Hurst. How, then, can the fact that, instead of suing, she contented herself with perfecting her legal rights by demanding payment and giving notice, and then forbore for a time, injure her position? Interest, of course, ran just the same as before maturity, and Hurst by paying the amount due as interest after maturity merely did what he was bound to do under the terms of the note. If either he or the endorsers had at any time after maturity tendered the amount due to Mrs. Read, she would have been compelled to receive it. After demanding payment and fixing liability by giving notice to the indorsers, upon what ground could she have claimed that there was a definite extension? If she could not, then no more could the parties

liable. *Green* v. *Lake*, 2 Mackey, 162; 2 Hare and Wallace's Leading Cases, page 419; *Bailey* v. *Adams*, 10 N. H. 164; *Fowler* v. *Brooks*, 13 N. H. 240; *Benson* v. *Phipps*, 87 Tex. 578; *Waters* v. *Simpson*, 2 Gilman, 570; *Arundel* v. *Goble*, King's Bench 1817 (Chitty on Bills, 413, note y); *Gahn* v. *Niemcewicz's Exr.*, 11 Wend. 312; *Hewet* v. *Goodrick*, 2 Car. & P. 468; *Badnall* v. *Samuel*, 3 Price, 521.

2. The fact that the seal of the Palisades Company was affixed to the note does not make it a sealed instrument. A corporation was anciently held to be able to act only by its seal. That idea has been abandoned, but it may still use the seal in deference to the ancient rule, as a means of evidencing its assent to a simple contract. And the use of a seal, where none is required, does not raise the contract to the dignity of a specialty or prevent *assumpsit* instead of covenant being maintained thereon. Thompson on Corporations, Sec. 5053; *Bank* v. *R. Co.*, 5 S. C. 156; *Levering* v. *Mayor*, 7 Hump. (Tenn.) 552. Such a seal will not affect the negotiability of commercial paper nor render it a sealed instrument. Thompson on Corporations, Sec. 5121; Morawetz on Corporations, Sec. 341; Tiedeman on Commercial Paper, Sec. 32; *Bank* v. *R. Co.*, 5 S. C. 156; *Rand* v. *Dovy*, 83 Pa. State, 280; *Stevens* v. *Ball Club*, 142 Pa. St. 52 (report of referee, 56); Jones on Railway Securities, Sec. 311 (2d ed.) Sec. 229; *Jackson* v. *Myers*, 43 Md. 452; 2 L. R. A. 833.

In a case like the present the seal will be disregarded as a mere excess. Thompson on Corporations, Sec. 5122; *Jones* v. *Horner*, 60 Pa. St. 214; *Mackay* v. *Church*, 15 R. I. 121; Daniel on Negotiable Instruments (4th ed.), Sec. 32, and cases cited. In regard to the rule of negotiability as to bonds, see *White* v. *R. Co.*, 21 How. 575.

Mr. Justice MORRIS delivered the opinion of the Court:

1. There are two principal questions in this case; and the first of these is, whether the attachment of the seal of the

appellant' company to its endorsement was sufficient to constitute the instrument a specialty, and to preclude its introduction in evidence in this action of *assumpsit*. We think that this question should be answered in the negative, both upon reason and upon authority.

Whether the mere affixing of a seal to an instrument of writing not required to be under seal, such as a promissory note, when there are no words in the instrument purporting an intention to execute it as a sealed instrument, is of itself sufficient to constitute it a sealed instrument, is a question upon which the authorities are greatly at variance; and it has received different answers in different jurisdictions. But however the rule may be in regard to individuals who become parties to negotiable paper, it seems to us to be the dictate of reason and the result of all the best authorities on the question that the impression of the seal of a corporation upon an instrument otherwise negotiable, especially when such impression is in connection with an endorsement of the note by such corporation, does not of itself suffice to restrain the negotiability of the paper or to convert it into a specialty.

It is, of course, now very well established that a corporation may contract without the use of its seal, and that it may therefore execute a negotiable promissory note and transfer such note by endorsement. For this purpose the action of its duly authorized officers in its name is sufficient. The fact that the authority of such officers to act for it may be attested by the corporate seal, should not in reason be allowed to affect the character of their act, so far as to convert it into a specialty, when the manifest purpose of the act itself is that it should not be a specialty. Undoubtedly it would not be contended that, if the authority of the officers to act were in a separate instrument of writing under seal, and the act done by them, and which was intended to be done, should be a simple contract, such as the execution of a promissory note, or its transfer by endorsement, the one instrument would be drawn to the other in such manner as

to change the promissory note into a sealed instrument, notwithstanding that it should be necessary in the course of proceedings to prove the authority of the officers to execute or endorse the note by the production of the sealed instrument by which they were so authorized. And if this would be the result if the two instruments were separate, it is difficult to see why the result should be different, if the two papers were attached to each other, or even if the sealed authority to the officers to act be endorsed upon the promissory note or other simple contract. The two things are separate and separable; and each will be taken for the purpose for which it is intended. The impression of a seal will not be given the effect of destroying a negotiable instrument, when plainly such was not the intention of the parties, and when such impression can properly be given its due effect as authenticating the power conferred upon the officers.

We think that this conclusion is fully sustained by the authorities. In the case of *Jackson* v. *Myers*, 43 Md. 452, it was said :

"The very nature of the transaction itself, the objects and purposes to be subserved by the issue of the note, as well as its form, plainly indicate that the parties must have understood that the note was negotiable, and that it would be so accepted and dealt with by the commercial community. . . . It sufficiently appears that the present note, and others like it, have been dealt with by the banks, and the commercial community generally, as ordinary negotiable paper; and in their understanding of the nature and qualities of these instruments, we think they have not been mistaken. The symbol or printed representation of the seal, if it be conceded to be a sufficient seal, was not printed on the note to restrain its negotiability, or to change it into a specialty, but rather as a mark of genuineness. The note in no manner depends upon the seal for its validity, but derives its entire authenticity from the signatures of the officers authorized to execute it."

To the same effect are *Dinsmore* v. *Duncan*, 57 N. Y. 573; *Vermilye* v. *Express Co.*, 21 Wall. 138; *Rand* v. *Doney*, 83 Pa. State, 280; *Auerback* v. *Mill Co.* 28 Minn. 291; *Central National Bank* v. *Railroad Co.*, 5 S. C. 156.

That there was no intention of the parties here to convert an instrument, which was in its inception and up to the time of its endorsement and transfer by the defendant company a negotiable promissory note, into a sealed instrument, subject in the hands of the endorsee to all the equities between the maker and the payee, is too clear to be questioned. There is no intimation of any such intention anywhere in the record. The notes themselves are in the ordinary form of negotiable paper, payable to the order of the company, and by those very terms rendered capable of being transferred by the company as ordinary negotiable paper by endorsement; and the endorsement was a general endorsement in blank, without reservation or qualification of any kind, other than such as is now sought to be inferred by the presence of the corporate seal in connection with the endorsement. And any such inference, it may be added, is antagonized by the individual endorsement of the appellant Clark subsequent to the endorsement by the company, and which would not have much meaning except upon the theory that the endorsement by the company still left the instruments negotiable. We are of opinion that the impression of the seal of the company in connection with the endorsement of the notes was intended merely to authenticate the authority of its officers and to evidence its assent to their execution of the endorsement as a simple contract, and not in any manner to restrain the negotiability of the paper.

2. The second question in the case is, whether the endorsers were discharged from liability by the alleged action of the plaintiff in granting an extension of time to the maker of the notes. We find no sufficient proof, or offer of proof in the record to show any agreement between the plaintiff and the maker of the notes for an extension of time.

The testimony simply shows a request by the maker for an extension for two years, and a proposition by the plaintiff for an extension for three years. It does not appear either that the request of the maker was granted, or that the proposition of the holder of the note was accepted.

In other words, it does not appear that the minds of the parties ever met, or that they ever came to any agreement. It may be, that, in the endorsement made by the plaintiff upon the letter of the maker of the notes, in which he asked for an extension of two years, she intended to write the word *two*, and not the word *three*, and thereby to accede to the request of the writer. But there is no proof whatever to that effect; and if such were the purpose it might have been shown by the plaintiff herself when on the stand as a witness, or by Hurst, the maker of the note. But there was no attempt to show anything of the kind; and we are compelled to take the endorsement on the letter precisely as it reads and according to its legal meaning in the words in which it is expressed; that is, as a declination by the plaintiff of an extension of the note for two years, and as a counter proposition by her to extend it for three years. Now, this counter proposition amounts to nothing, unless it is shown to have been accepted by the maker of the notes; and there is neither proof nor offer of proof of any such acceptance other than such as is sought to be inferred by the payment of interest by the maker of the notes after their maturity. But the value of this inference is destroyed by the fact that such payment of interest was no more than the maker of the notes was liable for in any event, with or without an extension; and we are no more justified in assuming that the payment was made under an extension of the notes than under a mere forbearance to sue. And there is also the countervailing fact, not to be ignored, that promptly upon the maturity of the notes, they were duly protested, and suit was commenced in due time against all the parties, which certainly could not be maintained against the maker

any more than against the endorsers, if there had been any such agreement for an extension as is now claimed.

We find that there were negotiations for an extension of time, but no proof of any agreement between the parties as the result of these negotiations. The appellants, it is true, claim in argument that they might have gone on to prove an agreement between the parties, but that the basis of their proposed superstructure was taken away from them by the refusal of the trial court to admit in evidence the letter of the maker of the notes asking an extension, and the endorsement thereon of a counter proposition by the plaintiff. But it is sufficient answer to this that the defendants made no offer whatever to follow up these letters with any proof that the minds of the parties thereafter came together. The letters of themselves prove nothing; and even if they had been admitted in the first instance, it would have been necessary afterwards to exclude them from the consideration of the jury, unless they were followed up with other testimony that would make them relevant and competent to prove the issue between the parties. An offer is no proof of an agreement and does not even tend to prove an agreement. When it is sought to give evidence of such an offer, and objection is interposed, as it may properly be, it behooves the party adducing such evidence to make proffer of the other evidence connected therewith which would make the former relevant. This is a well-established rule; and it is quite applicable to the present case.

We do not find that the contention of the appellants on this second question has any better or more substantial foundation than their propositions on the first question.

3. Some other questions, also, are raised; but they do not seem to require any great consideration by us. It is urged, for instance, that the endorsement of the notes in suit by the company is insufficient, as the word "by" is omitted between the title of the company and the names of the officers who are claimed to have acted for it. But while it might have

been more regular and more accurate to insert this little preposition, it is well recognized in the business community that the present form is not an unusual mode of signature by corporations. Every one understands it, and no one is misled by it. Neither do we attach importance to the questions raised in regard to the sufficiency of the demand upon the note and of the notice of protest given to the endorser company through the officers who had made the endorsement. We regard the demand and notice as sufficient, and as having been sufficiently proved.

We find no error in the record; and we are, therefore, of opinion that the judgment appealed from should be *affirmed, with costs. And it is so orderd.*