(101 App. Div. 500.)

### BEEBE v. MEAD et al.

(Supreme Court, Appellate Division, First Department. February 10, 1905.)

1. INTERPLEADER—RIGHT TO MAINTAIN.

    A warehouseman who received successive orders, each purporting to come from his bailor, and each transferring title to a different person, both of the transferees claiming title to the property by virtue of the order transferring title to him, was entitled to a judgment requiring claimants to interplead.

2. SAME—RECOGNITION OF CLAIMANTS' TITLE—EFFECT AS ESTOPPEL.

    The mere receipt and recognition by a warehouseman of an order made out by a member of a firm, transferring title to goods in the warehouse from the firm to the member individually, does not preclude the warehouseman from questioning the validity of the order by a suit to compel the individual to interplead with another claimant of the goods under a

subsequent order made out by the firm, in the absence of the existence of elements of estoppel.

**3. SAME—APPEAL—QUESTIONS PRESENTED—TITLE.**

The sufficiency of the evidence to justify a determination of the title of the adverse claimants in an interpleader suit is not before the court on an appeal from a judgment awarding interpleader, where no adjudication of title was made by the lower court, and the answers of the claimants were not served upon each other so that they could require the court to adjudicate on their rights, and they made no claim to such adjudication upon the trial.

**4. SAME—ALLEGATION OF TENDER—SUFFICIENCY.**

In a suit by a warehouseman to compel adverse claimants of 1,000 chests of tea deposited with him to interplead, it was sufficient for plaintiff to offer to deliver the tea to the defendant who should be adjudicated to be its owner, and it was not necessary for him to produce the tea in court or deposit the chests with the clerk.

**5. SAME—NECESSITY OF AWAITING SUIT.**

A warehouseman, beset by adverse claimants to the goods deposited with him, may maintain an interpleader suit without waiting for the institution of an action for conversion by one of the claimants and then procuring an order requiring the other to interplead.

**6. JUDGMENT—RECITALS—FACTS.**

A judgment, following a trial by the court, should merely state that the court has made its findings of fact and conclusions of law, and then decree the relief to which plaintiff is entitled, without again reciting the facts found.

[Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, §§ 397, 399.]

**7. INTERPLEADER—ALLOWANCES TO PLAINTIFF.**

In a suit by a warehouseman to compel adverse claimants of goods deposited with him to interplead, where no other relief than an order for interpleader was given by the judgment, and the value of the property was not involved, and plaintiff himself made no claim to the property, it was error for the court to award plaintiff an allowance of 5 per cent. upon the value of the property.

Appeal from Special Term, New York County.

Action by Walter H. Beebe against Frederick Mead and others. From a judgment requiring defendants to interplead, they appeal. Modified.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Charles H. Knox, for appellant James Voorhis.

William R. Barbour, for appellants Carter, Macy & Co., and Frederick Mead.

James O. Clark, for respondent.

INGRAHAM, J. This was an action of interpleader by which the plaintiff, who was a warehouseman, asked that the defendants be required to interplead and settle their rights to 1,000 half chests of tea which were on storage in the plaintiff's warehouse, and that, upon delivering the said tea to such person or persons as the court should direct, the plaintiff be discharged from all liability to either of the defendants. The complaint alleges that the defendants Mead and Voorhis were copartners. The defendants interposed separate answers, the defendant Mead denying that he and Voorhis

were copartners. The answer of Mead alleges that the firm of Frederick Mead & Co. transferred the teas on storage with the plaintiff, consisting of about 2,500 half chests, and which included the 1,000 half chests involved in this controversy, to the defendants Carter, Macy & Co.; that the firm of Mead & Co. does not make any claim to the teas referred to in the complaint, but that the same are, and ever since the 14th day of June, 1902, have been, the property of Carter, Macy & Co. The defendants Carter, Macy & Co. allege that they are the owners of the tea and entitled to the same, and that Voorhis has no interest in them, and demands judg- ment that the 1,000 half chests of tea mentioned in the complaint be adjudged to be, and to have been since the 14th of June, 1902, the property of Carter, Macy & Co., and that the same be delivered to the said Carter, Macy & Co. The answer of the defendant Voor- his alleges that he was a member of the firm of Mead & Co.; that he is the owner of the 1,000 half chests of teas; that on the 17th day of June, 1902, the said teas had been transferred to and were then his property; and Voorhis demands judgment that the com- plaint be dismissed "as to him, and declaring him to be the owner of the 1,000 half chests above mentioned, and ordering the delivery of said 1,000 half chests of teas" to the plaintiff.

It is not disputed but that these teas were stored with the plain- tiff as a warehouseman by the firm of Frederick Mead & Co. It also appeared that on the morning of the 17th day of June, 1902, the plaintiff received an order as follows:

"Gents: Please transfer to the order of James Voorhis and hold subject to his order one thousand half chests Japan tea mkd $\triangle$ various ships and num- bers, and oblige,

"Frederick Mead & Company."

That such order was in the handwriting of Voorhis, and that the plaintiff had for many years transacted business with the firm of Frederick Mead & Co., and that during that time Voorhis had acted as a member of the firm in his dealings with the plaintiff; that the plaintiff accepted this order in good faith, and made entries in his books correspondingly; that subsequently and on the same day there was presented to the plaintiff the following order:

"New York, June 17, 1902.

"Mr. W. H. Beebe: Please deliver to Messrs. Carter, Macy & Company all of mark $\triangle$ Japan, and all of mark $\triangle$ Japan, 2874 hfchs.

"Frederick Mead & Company."

And that Carter, Macy & Co. demanded the delivery of the teas under this order. Voorhis and Carter, Macy & Co. each demanded possession of the teas, and the plaintiff, in consequence of both parties claiming them, refused to deliver to either, and at once in- stituted this suit. There is no allegation or suspicion of any col- lusion between the plaintiff and either Voorhis or Carter, Macy & Co., and upon the trial, as upon this appeal, both Voorhis and Car- ter, Macy & Co. claimed to be the owners of the 1,000 half chests of teas and entitled to the delivery thereof, and both here claim that

their title to the teas was established by the evidence before the court, and for that reason the plaintiff has no right to maintain this action for an interpleader.

The position of the plaintiff, on the 17th day of June, 1902, when the second order directing the delivery of the teas to Carter, Macy & Co. was delivered to him, was that two parties claimed this 1,000 half chests of tea under orders purporting to be given by Frederick Mead & Co., who were the undisputed owners of the teas, and who had stored them with the plaintiff. Both Voorhis and Carter, Macy & Co. could have demanded the teas, and, upon refusal, commenced an action for conversion. The plaintiff had not the means of ascertaining which of these conflicting claims was valid and which of the claimants was the actual owner of the teas. If he had delivered the teas to the one not entitled to their possession, he would have been liable to the true owner for the value of the teas. If he had refused to deliver to either until their claims were settled, he would have been liable to one of the claimants for the value of the teas, and possibly to both. By the position in which he was placed through no fault of his, he was required to adjudicate as between these rival claimants as to which was entitled to the teas, without the means of ascertaining the exact facts in relation to them, with no power to compel either party to submit to him their evidence of title further than the orders that had been delivered, and with no possibility of saving himself from an expensive litigation, which, because of his inability to procure the evidence of the title of the respective owners of the tea, might have resulted in a double liability. The position now taken by the respective claimants is itself evidence that two parties claimed title to the property, and, it seems to me, justified the bringing of this action. A mere bailee, making no claim to the property in his possession, having acted in good faith in relation to it and with reasonable care and prudence, should certainly be protected from rival claimants, and not be compelled to determine the validity of their several claims when a wrong determination would involve such serious consequences. "The law does not place so great a responsibility upon him, but provides him with a remedy to protect himself against a double liability, or, to speak more accurately, against a double vexation on account of one liability." Crane v. McDonald, 118 N. Y. 648, 23 N. E. 991.

Reliance is placed upon the fact that the plaintiff recognized the transfer of the 1,000 half chests of tea to Voorhis, and is thus estopped from disputing Voorhis' title, but the order purported to be a transfer of the tea by the firm to one of its members. It placed the legal title upon the books of the plaintiff in an individual member of the firm, instead of in the firm. If, as is claimed by Carter, Macy & Co. and Mead, Voorhis was not a member of the firm, this transfer was wholly ineffectual to pass the title to the property, and the question as to whether Voorhis was a member of the firm was one of the questions upon which the title to the 1,000 half chests of teas was to be determined. The mere receipt and recognition of this order by the plaintiff would not be controlling upon the plaintiff, in favor of Voorhis, un-

less in some way the plaintiff was estopped from questioning it. Voorhis was not a purchaser of the property in good faith and for value. There is no claim or suggestion that he parted with anything relying upon the recognition by the plaintiff of his title, or that any condition existed that would estop the plaintiff from questioning the validity of this order. The acceptance of such an order does not affect the right of the bailee to this relief. Atkinson v. Manks, 1 Cow. 691, approved in Crane v. McDonald, 118 N. Y. 648, 23 N. E. 991.

Whether or not the evidence introduced on the trial was sufficient to justify a determination by the court of the ownership of these 1,000 half chests of teas is not presented upon this appeal, as there was no adjudication that the tea was the property of either. There is no evidence that these respective answers were served upon the other defendants so that either party could demand that the court should in this action adjudicate as to the rights of the respective defendants as against each other. Nor did either of the defendants make such a claim upon the trial. The offer of the plaintiff to deliver the tea to the defendant who should be adjudged to be its owner was a sufficient allegation to sustain the action of interpleader. Certainly a plaintiff should not be compelled to produce 1,000 chests of tea in court, or to deposit them with the clerk. He held it as warehouseman, subject to the judgment of the court, and when, by the consent of all the parties, the tea was sold and the proceeds deposited in court to await the final determination of the action, there could be no claim that the allegations of the complaint as to the disposition of the property in question was insufficient to justify granting the plaintiff the relief that he asked. It was suggested on the argument that the proper course for the plaintiff was to wait until he was sued and then interplead, but, if either of these claimants had commenced an action for conversion, the claim then against the defendant would be a personal claim for a sum of money, and not for the possession of the property, and it would be too late for him to interplead. I think that upon the conceded facts and the answers of the respective defendants the plaintiff was entitled to a judgment requiring the claimants of this tea to interplead.

At the end of the trial the court found the facts and conclusions of law separately. The judgment entered thereon contains a recital of the various facts found. This was improper. The judgment should contain nothing but a statement that the court has made its findings of fact and conclusions of law, and then decree the relief to which the plaintiff was entitled. All of these recitals should therefore be stricken from the judgment. As this practice has become common, it is proper that we should call attention to its impropriety.

There was also awarded to the plaintiff an allowance of 5 per cent. upon the value of the teas. We think this allowance was unjustified. The cause of action was the right of the plaintiff to compel these defendants to interplead as to this property. The plaintiff made no claim to the property, and the title to the property was not involved in the determination of any claim presented by the plaintiff. As upon the pleadings the plaintiff was entitled to a judgment requiring the several claimants to this property to interplead, and as no other relief was given

by the judgment, the value of the property itself was not involved, and there was no basis upon which an allowance could be predicated.

It follows that the judgment should be modified by striking out the recitals of the facts found and the allowance, and the judgment appealed from, modified as herein directed, should be affirmed, but without costs of this appeal. All concur.